59 So.2d 431

STATE v. BROWN.
No. 40686.

April 28, 1952.

Rehearing Denied June 2, 1952.

Everett R. Scott, Jr., Lake Charles, Leroy White, New Orleans, for appellant.

Bolivar E. Kemp, Jr., Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Griffin T. Hawkins, Dist. Atty., Edward L. Shaheen, Asst. Dist. Atty., Lake Charles, for appellee.

LE BLANC, Justice.

Defendant, John C. Brown, was charged in a joint indictment with Lewis Vital (alias Black Joe) with unlawfully possessing, having under their control, selling, giving and delivering unto Mila B. Dunn, and H. R. Montgomery, the latter being a person under the age of twenty-one years, eleven marijauna cigarettes containing a total of approximately thirty-one grains of marijauna, in violation of LSA–R.S. 40:962 and 981, as amended by Act No. 30 of the First Extra Ordinary Session of the Legislature of Louisiana for the year 1951. He was arraigned on August 16, 1951 and pleaded not guilty. On motion of Lewis Vital, concurred in by the prosecution, a severance was granted on October 15, 1951, and the trial continued as to defendant, John C. Brown.

After trial, the defendant was found guilty of having under his control, selling, delivering and possessing a narcotic drug. Defendant filed motions in arrest of judgment, for a new trial and an amended motion for a new trial, all of which were overruled by the trial judge, and bills of exception reserved.

During the course of the trial, nine bills of exception were reserved but in his brief and during oral argument, counsel for defendant abandoned five of them and relies on four for a reversal of the judgment. Since one of these, Bill of Exception Number 4, is found to have merit, and as a result of our sustaining the same the case will have to be remanded to the lower court for a new trial, it will be unnecessary for us to review any of the remaining three.

Bill of Exception No. 4 was reserved to the action of the trial judge in refusing to permit the witness, Claude Wilson, to testify on the ground that his answers to the questions which might be propounded to him would tend to incriminate him and this would be in violation of the privilege against self-incrimination which is granted under Article 1, section 11 of the Constitution of this State. Counsel for defendant contends that this was prejudicial error be-

cause the testimony of this witness was necessary to help to prove and sustain his client's defense of illegal entrapment.

Immediately upon the witness, Claude Wilson, being sworn, the trial judge asked him his name and upon ascertaining from him that he was under charges for a similar violation as was the accused and his case was fixed for trial during the same week, he at once cautioned him as to his constitutional privilege and told him that he did not have to answer any questions unless he wanted to. The court then asked him if he so understood, to which he replied that he did. A few more questions having been propounded to him by counsel for defendant, he was again informed by the court that he might answer those but shortly thereafter the court again cautioned him that he need not answer adding its own observation that the witness was not qualified to judge and pass upon his own constitutional rights.

At this point, the witness' own counsel who was present in the court asked if he could talk with him. The court granted him permission to do so and after consulting with his attorney, away from the witness stand, the witness returned to the witness box and was asked the question, "Are you acquainted with H. R. Montgomery?" to which question the court ordered him not to reply and thereupon relieved him from testifying altogether. Counsel for defendant objected to this ruling by the court and reserved a bill of exception.

The note of evidence taken in connection with the bill at no stage indicates that the witness refused to testify. On each occasion that the court explained the privilege of self-incrimination to him he said that he understood but never did he claim the privilege himself. We note that at one point, upon being addressed by the court, his counsel stated that he did not want the witness to testify to any incriminating evidence and that he (counsel) meant to uphold his constitutional privilege. But even then the witness remained silent.

Wigmore On Evidence, Vol. VIII at section 2196, states:

"The *claim of privilege* can be made solely by the *witness himself;* the privilege (as the common phrasing runs) is purely personal to himself. Whether he chooses to fulfill his duty without objection, or whether he prefers to exercise the exemption which the law concedes to him, is a matter resting entirely between himself and the State (or the Court as its representative). The *party* against whom the testimony is brought has no right to claim or to urge the exemption on his own behalf." (Author's emphasis.)

The author then goes on to state that where the privilege is denied, no harm is done to the party calling the witness and such error cannot form the basis of a new trial. Significantly, however, as regards the present case, he further states:

"If, however, the ruling erroneously *affirms the privilege,* the result is dif-

ferent; for here the party who desired the testimony has obviously lost evidence which by hypothesis is relevant and might have assisted the establishment of the truth of his cause. Hence, the deprival of this evidence is for *the party* as proper a ground of complaint and exception as it would be in any other instance, and may become a ground for granting a new trial, so far as the rejection of a specific item of evidence can ever be properly so considered." (Author's emphasis.)

At section 2268 it is stated:

"The privilege is merely an *option of refusal,* not a prohibition of inquiry * * * hence it follows that when an *ordinary witness* is on the stand, and a criminating fact, relevant to the issue, is desired to be proved through him, the question may be asked, and it is for him then to say whether he will exercise the option given him by the law. It cannot be known beforehand whether he will refuse. Besides, to prevent the question would be to convert the option into a prohibition." (Author's emphasis.)

And at section 2275 he states that "It has never been doubted that the privilege like all privileges, is in itself *waivable*: * * *". (Author's emphasis.)

In a recent case before this court, State v. Davis, 208 La. 954, 986, 23 So.2d 801, 811, 70 Corpus Juris, verbo Witnesses, Section 906 was quoted with approval as follows:

"'* * * It is likewise the rule that the privilege of a witness at a trial of refusing to answer on the ground of self-incrimination is for the protection of the witness, and not for that of any other parties, so that, while the privilege may, and should, be claimed by the witness, it is a personal privilege of the witness and cannot be claimed by the witness for the benefit of another. Moreover, the counsel for the witness may not claim the privilege in behalf of such witness. So neither the party against whom the witness is called to testify, nor such party's counsel, nor the party calling the witness, nor such party's counsel, *nor the court,* can claim the privilege for the witness. * * *'" (Emphasis supplied.)

In the case of State v. Mohr, 99 N.J.L. 124, 122 A. 837, 839 in commenting on the action of an attorney who is counsel for a witness in invoking the privilege on his behalf when he is not of counsel in the case that is on trial, the court had this to say:

"Although Mr. Davis has appeared before us on the return of the present writ of error as associate counsel for the state, his appearance in the trial court was not in any such capacity, but solely as counsel for the witness Powell. That being the legal status of Mr. Davis at the trial, the legal impropri-

ety of his action in advising his client while on the witness stand as to whether or not he should answer questions put to him on cross-examination cannot be doubted. As was stated by the present Chancellor in the case of Vineland v. Maretti, 93 N.J.Eq. [513], 521, 117 A. 483, a witness is not bound to answer a question where the answer thereto will criminate or disgrace him. The protection against self-incrimination, however, is the privilege of the witness, and he may waive that privilege, and his action in that regard is a matter personal to himself, and neither the court nor the parties or their counsel can properly object to the witness answering questions upon the ground of self-incrimination. A question may lawfully be put, whatever its tendency to draw out self-incriminating testimony may be, and the witness must decide for himself whether he will assert his privilege or waive it and answer. That this is a correct statement of the rule with relation to this subject is entirely settled; and it goes without saying, as a corollary to this rule, that the witness has no right to be attended by his personal counsel (who has no place in the trial of the cause) and receive from him advice as to whether or not he shall answer a given question."

We conclude therefore that under the authorities cited, counsel for the witness, Claude Wilson, had no right to interpose any objection nor to claim the privilege of immunity on his behalf and further that the trial judge had no right to refuse to permit the witness to testify since the witness himself never claimed the privilege. Until the witness, to whom the privilege is personal, invokes it, himself, it is improper for the court to prohibit him from testifying to relevant facts. The action of the trial judge in this case constituted reversible error and it becomes necessary for us therefore to set aside the judgment under which he was found guilty and to remand the case for a new trial.

For the reasons stated the judgment appealed from is now reversed, annulled and set aside and the case is remanded, to the District Court for a new trial.

FOURNET, C. J., absent.