McCALEB, Justice.
 

 Appellants were indicted and tried for the aggravated rape of Norma Jean Eschete. Singleton was found guilty as charged and sentenced to death. Johnson was found guilty of attempted aggravated rape, a responsive verdict, and sentenced to twenty years imprisonment at hard labor in the state penitentiary. They have appealed, relying on six bills of exceptions for a reversal of their convictions and sentences.
 

 Bill No. 1 was reserved to the denial of a motion for a preliminary examination filed on behalf of appellants.
 

 It appears from the record that appellants were apprehended on the night of the crime (August 26, 1967), at which time they were apprised by the arresting officers of their constitutional rights. On September 5, 1967 they were indicted by the Grand Jury of Terrebonne Parish and, on the following day at their request, the judge appointed competent counsel to represent them. On September 29, 1967 appellants, accompanied by their appointed counsel, were arraigned, entered pleas of not guilty, and the case was fixed for trial for January 16, 1968. On December 18, 1967, less than a month before trial, counsel for appellants filed a motion for a preliminary examination which was denied by the judge, and a bill was reserved.
 

 We find no merit in the bill. Article 292, C.Cr.P., while making it mandatory for the judge to order a preliminary hearing before the finding of an indictment, provides: “After the finding of an indictment or the filing of an information an order for a preliminary examination in felony cases
 
 may
 
 be granted by the court at any time either on its own motion or on request of the state or of the defendant.” (Italics ours) This is a recodification of our prior law (see R.S. 15:154) and the long-established jurisprudence of this Court that, after indictment the granting or refusal of a motion for a preliminary hearing lies within the discretion of the trial judge, and his action in the premises will not be disturbed save in cases of manifest abuse. See, among other cases, State v. Pichon, 148 La. 348, 86 So. 893; State v. Gaspard, 222 La. 222, 62 So.2d 281; State v. Hamilton, 247 La. 43, 169 So.2d 902;
 
 *23
 
 and State v. Marchetti, 247 La. 649, 173 So.2d 531.
 

 Under the facts and circumstances of this case, we think the judge exercised a wise discretion in denying a preliminary hearing, as the application was not made until approximately a month before the date set for the trial, notwithstanding that counsel had been appointed to represent appellants approximately three and one-half months prior to the time the application for a preliminary hearing was filed.
 

 Counsel for appellants, evidently realizing the weakness of his position under our law and jurisprudence, proclaims that the denial of the motion for a preliminary hearing under the circumstances presented in this case was tantamount to a denial of appellants’ right to counsel guaranteed them by the -Federal and State Constitutions, for the reason that they were not provided with counsel until after indictment by the Grand Jury and, therefore, were unable to assert their legal rights to a preliminary hearing prior to indictment. In support of this position counsel cites Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167; Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126, and Jennings v. Superior Court of Contra Costa County, 66 Cal.2d 867, 59 Cal.Rptr. 440, 428 P.2d 304 (1967).
 

 We perceive no substance in this argument. In the first place there is no constitutional right to a preliminary hearing, and the law is well settled in this state and under the federal system that, since the purpose of a preliminary hearing is to determine probable cause, no such hearing is required where the defendant has been indicted by a Grand Jury because the fact of indictment evidences probable cause. See Vincent v. United States, C.A. Mo.1964, 337 F.2d 891, cert. denied 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281, rehearing denied 381 U.S. 947, 85 S.Ct. 1775, 14 L.Ed.2d 713; Stephens v. United States, C.A. 10 1965, 341 F.2d 100, and United States v. Smith, C.A. 6 1965, 343 F.2d 847, cert. denied 382 U.S. 824, 86 S.Ct. 55, 15 L.Ed.2d 69.
 

 Nor is the denial of the preliminary hearing in this case in anywise violative of appellants’ constitutional right to the assistance of counsel for their defense under Article I, Section 9 of the Louisiana Constitution, and the Sixth Amendment to the Federal Constitution. For the facts show that although appellants were advised of their right to counsel immediately upon their arrest on August 26, 1967, they did not request counsel until September 6, 1967, the day after they were indicted by the Grand Jury. The judge promptly acceded to this request. The cases relied on by defense counsel as supporting this conten
 
 *25
 
 tion are wholly inapposite both factually and legally.
 

 The other bills of exceptions in the case, Numbers 2, 3, 4, 5 and 6, were all taken to the “in-court” identification of appellants by various state witnesses and present the same claim of error. These objections are founded on the theory that the identifications were inadmissible as they were based upon a confrontation of appellants by the eyewitnesses on the night of the crime in the sheriff’s office when two deputies were present and while appellants were handcuffed, and at a time when appellants had not been afforded counsel and had not intelligently waived their right to counsel. Further, it is asserted that appellants were directly confronted by the witnesses without the benefit of a police lineup. It is said that the “in-court” identification is violative of appellants’ rights under the Sixth and Fourteenth Amendments to the United States Constitution, and the decision in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, is cited as authority in support thereof.
 

 The facts pertinent to the admissibility of the “in-court” identification are as follows: On the night of August 26, 1967, at approximately 9:00 o’clock P.M., Kenneth Brooks, Glen Brooks (his brother) and Bertha Mae Knight left Houma, Louisiana, in an automobile and proceeded to Gray, Louisiana. They stopped to pick up Norma Jean Eschete (age 15 years) and the two couples drove towards Thibodaux. Originally, they had intended to attend a movie at a drive-in theater, but decided it was too late and Kenneth Brooks, the driver, turned off the highway and proceeded back towards Houma on the Little Bayou Black Highway. When they had traveled about two miles, they decided to park on a road in a sugar cane field just off the paved highway. They had been parked for about ten or fifteen minutes when a Negro man carrying a pistol approached the automobile and knocked on the driver’s window. Kenneth Brooks, the driver, opened his door slightly and the Negro man ordered him and Glen Brooks out of the car. When Glen alighted he did not know the Negro had a gun and Glen shoved the man. The Negro struck Glen on the side of the head with the pistol, and it discharged but no one was hit by the bullet. (This Negro was appellant Singleton.)
 

 Meanwhile, another Negro man (appellant Johnson) approached the Brooks automobile, and the first Negro (Singleton) ordered the boys to start walking down the field road away, from their car. After marching the Brooks boys about 300 feet at gun point, this man ordered them to stay there and not to return to their car or they would be killed.
 

 
 *27
 
 Singleton returned to the car where the two girls were being held captive by the other Negro, appellant Johnson.
 

 Singleton then pulled Bertha Mae Knight out of the car and attempted to rape her. He was unsuccessful. Bertha Mae Knight was returned to the car where she was guarded by Johnson who now was armed with the pistol. Singleton pulled Norma Jean Eschete out of the car and attempted to rape her by leaning her against the back of the car. Being unsuccessful again, he threw his victim to the ground and by choking her and applying force, he was able to have sexual intercourse with her.
 

 Johnson then took Bertha Mae Knight out of the car, and after turning the pistol over to Singleton, forced Bertha Mae to the ground and tried to rape her. Johnson was unsuccessful.
 

 In the meantime, the Brooks boys had removed their shirts to avoid detection by appellants, and they crawled in ditches beside the road back towards the car to a distance close enough where they could hear, and also observe the rape of Norma Jean by Singleton and the attempted rape of Bertha Mae by Johnson.
 
 [1]
 

 Appellants removed the car keys from the Brooks’ automobile and left the scene in an automobile being driven by a third (unidentified) Negro. The boys attempted to start the automobile by jumping the wires in the ignition switch. Later, appellants returned to the scene in the automobile in which they had left, and threw the keys of the Brooks’ car onto the edge of the road. The Brooks boys then drove away, stopping first at the home of a sister-in-law of Norma Jean but, on finding no one at home, proceeded to the Terrebonne General Hospital in Houma.
 

 The girls were examined by the coroner who confirmed the rape of Norma Jean, and the local law enforcement officers were informed and given a description of the assailants. At about 12:30 o’clock A.M., Terrebonne Parish Deputy Sheriffs picked up the appellants on Little Bayou Black Highway and brought them to the sheriff’s office at the Courthouse at Houma. Singleton was carrying a pistol at the time he was apprehended. The appellants were handcuffed and the two girls and the Brooks boys were brought to the sheriff’s office where they viewed appellants in
 
 *29
 
 handcuffs and identified them as their assailants.
 

 Under the decisions in United States v. Wade, supra; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, there seems to be no doubt that the pretrial confrontation of appellants by the eyewitnesses to the crime prior to the appointment of their counsel constituted a violation of appellants’ constitutional right to assistance of counsel at a critical stage of the proceeding. For, although appellants had been informed of their constitutional rights prior to the pre-trial confrontation, it can hardly be said that, in the short space of time ensuing between their arrest and the confrontation, they had adequate time within which to intelligently determine that they would not need the assistance of counsel.
 

 In any case, the pre-trial confrontation conducted without appellants having counsel present to give them assistance is fatal to its legality under the views expressed in the above-cited cases. And this circumstance, conformably with the dictum of the United States Supreme Court, affects the admissibility in evidence of the “in-court” identifications. For, by reason of the illegal pre-trial identification, the “in-court” identification may not be received in evidence as formerly, when objections to such evidence were regarded as affecting the weight rather than its admissibility, unless the Court finds that the prosecution has established by convincing proof that such identifications are based on observations of the accused independent of and disassociated with the “tainted” pre-trial confrontation. See State v. Allen, 251 La. 237, 203 So.2d 705, and Rivers v. United States, C.A. 5, 1968, 400 F.2d 935.
 

 However, after reviewing the evidence taken at the trial, we are of the opinion that it convincingly establishes the admissibility of the “in-court” identification of appellants. In the first place, it is to be borne in mind that this crime was one of considerable duration as the episode is shown to have lasted between thirty to forty-five minutes which, despite the fact that it occurred at night, afforded the victims greater opportunity to observe appellants than would ordinarily have been the case in armed robberies and other crimes of sudden violence. Then, too, the nature of the offense was such that it brought the participants therein in close physical contact with their victims, so much so that the females involved were bound to have a vivid recollection of the faces of the unmasked culprits and were able to recount in detail the horror of their experience.
 

 The same is true of the young girls’ escorts, who were assaulted by the armed ag~
 
 *31
 
 gressor, threatened and marched some 300 feet from the automobile and ordered to remain there, away from their girl companions or be killed. Unquestionably, from their close contact these boys had full opportunity to observe the facial features of their assailants, particularly Singleton, before his attack on the young girls. And they were able to see the facial features and the physical characteristics of both appellants during the ensuing rape and attempted rapes which occurred outside of the automobile, for they testified that they had crawled back, hiding in ditches, to positions within some sixty feet of the scene of the crime, from where they were able to witness the assaults on the girls. These boys, while admitting that it was dark, stated that from their positions they were able to occasionally observe the features of the assailants from the light of the car for, when the door was opened (and it was opened several times), it reflected on the assailants’ faces.
 

 Finally, we note that counsel is complaining that the pre-trial identification of appellants was made without the benefit of a police lineup while appellants were handcuffed. We gather, although it is not claimed, that counsel is contending that the pre-trial confrontation denies appellants due process of law under the Fourteenth Amendment.
 

 A similar contention was made in Stovall v. Denno, supra. There it was recognized that the practice of showing a suspect singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned, and the Court held that determination of whether or not such a confrontation would violate due process depends upon the totality of the circumstances surrounding it. In that matter, the asserted proposition was denied as the Court found from the facts that the pre-trial confrontation was essential as the only eyewitness was confined to a hospital, and it was necessary that the police take immediate action to establish the identity of her attacker.
 

 While the facts in the instant case are not as strong in favor of the state as those appearing in Stovall v. Denno, we doubt that the claim of violation' of due process is valid. It appears to us that, since appellants had been apprehended shortly after the occurrence of the crime on descriptions given the police by the eyewitnesses, they suffered no disadvantage (save for the absence of counsel in their behalf) in being viewed by the victims of the crime as soon as practicable for, apart from the benefit of immediate discharge appellants would have secured had the eyewitnesses been unable to identify them, such immediate confrontation comes within the area (as stated by the Supreme Judicial Court of Massachusetts in Commonwealth v. Bumpus, 1968, 238 N.E.2d 343) "* *
 
 *33
 
 where proper police protection of the public may be greatly embarrassed by rigid rules restricting intelligent, fair police action.”
 

 Moreover, this Court is not prepared at this time to hold that pre-trial identifications made singly violate due process in the absence of a clear holding of the Supreme Court of the United States to the contrary. This is because there is evidently a disagreement between the justices of that Court as to whether or not such pre-trial confrontations do constitute a violation of due process. In the recent case of Biggers v. State of Tennessee, 390 U.S. 404, 88 S. Ct. 979, 19 L.Ed.2d 1267, decided on March 18, 1968, the rape conviction of the defendant was affirmed by an equally divided court, notwithstanding that, after defendant’s arrest for another crime, the victim of the rape was brought to the police station and asked to look at the suspect, who was directed by the police to repeat the words spoken by the rapist. After he had spoken, the victim identified defendant as the man who raped her. This confrontation took place seven months after the commission of the crime. And see also Simmons v. United States, (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, upholding immediate identification of persons for arrest by photographs.
 

 The convictions and sentences are affirmed.
 

 [1]
 

 . It is to be noted that Johnson was not charged with the attempted aggravated rape of Bertha Mae Knight, but was indicted for the aggravated rape of Norma -Jean Eschete and was found guilty of the attempted rape of the latter. This was a proper responsive verdict under Article S14, C.Cr.P., to the charge of aggravated rape. Johnson unquestionably aided and abetted Singleton in his rape of Norma Jean and, therefore, was chargeable with the substantive crime because, under our law, all persons concerned in the commission of a crime are principals. See R.S. 14 :24.