248 So.2d 307

STATE of Louisiana

v.

David Lee MIXON and Gerald Allen.

Nos. 50871, 51213, 51251.

May 4, 1971.

Rehearing Denied June 7, in No. 50871.

Barry F. Viosca, New Orleans, for defendant-appellant Gerald Allen.

Philip Schoen Brooks, New Orleans, for defendant-appellant David Lee Mixon.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.

McCALEB, Chief Justice.

David Lee Mixon and Gerald Allen were charged with the armed robbery of Mr. and Mrs. Frank Romaguera on December 13, 1968. They were tried by a jury, convicted, and each was sentenced to serve twenty-five years at hard labor in the State Penitentiary.

Six bills of exceptions were reserved during the course of the trial and thereafter perfected. They appear in the record filed here in connection with this appeal from the convictions, which is Case No. 50,871 of the docket of this Court.

The other two docket numbers shown above (Nos. 51,213 and 51,251) were assigned to applications for writs of mandamus, filed separately by appellants, in which they alleged that all of the evidence necessary for a determination of the issues was not contained in the transcript of the record filed here and prayed that the trial judge be ordered to cause a record of the entire proceedings to be filed. In response to the applications, we ordered the trial

judge to show cause why the relief sought by the appellants should not be granted, 257 La. 975, 244 So.2d 853. By the time the appeal was orally argued in this Court, the trial judge had supplied a transcript of the entire record which is now before us to be considered in connection with the bills of exceptions. Therefore, the issue presented by these two applications is now moot.

The three bills of exceptions principally relied on by defense counsel are Nos. 1, 2 and 4. They involve an "in-court" identification of appellants by some of the State's witnesses,[1] testimony concerning a pre-trial lineup attended by these witnesses on December 21, 1968, and the introduction of a photograph of a lineup held on December 19, 1968 from which some of the witnesses identified the appellants.

It is contended by counsel that the pretrial lineup of December 21st was illegal because appellants were not then represented by counsel and had not waived their constitutional rights to counsel. They assert that under the doctrine set forth in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, testimony of identification at the lineup was improperly admitted; and further that, since the "in-court" identification of appellants by their victims

was tainted because of their having taken part in the illegal lineup, the trial judge committed reversible error in permitting the "in-court" identifications.

The testimony of Mr. and Mrs. Romaguera shows that they were working in their store on December 13th when the appellants entered. The latter remained in the store and were clearly observable by the Romagueras for some time, first asking for a product not kept in stock, then for some gum. When Mrs. Romaguera turned to get the gum, Allen produced a pistol, held it on her husband and ordered her to open the cash register. Mixon removed the money ($5) which was in the register. Meanwhile, Mr. Romaguera was made to lie down on the floor. Thereafter, before leaving the store, the assailants removed money ($30) from Mrs. Romaguera's apron pocket and twenty dollars from Mr. Romaguera's wallet, which they had taken from his pocket. About a week later (on December 20th), police detectives came to the Romagueras with a photograph of a lineup taken on December 19th and asked if they could identify any of the persons in the lineup as the persons who had robbed them. Mr. Romaguera identified both of the appellants. Mrs. Romaguera identified one. The following day they were taken to a live lineup, at

---

1. Mr. and Mrs. Romaguera testified as eyewitnesses to the robbery. Three other witnesses, whose testimony was introduced for the purpose of showing system and intent, testified as to other armed robberies by one or the other of the appellants, they being eyewitnesses to those robberies.

which each identified both of the appellants. Also in attendance at the latter lineup were the other three witnesses who testified at the trial.

During the initial stages of their respective direct examination both of the Romagueras made a positive "in-court" identification of the appellants as being the persons who had robbed them. Thereafter, they were asked concerning their identification from the photograph of the December 19th lineup. Later, the photograph was admitted into evidence. Also, they were questioned concerning the December 21st lineup, from a picture taken of that lineup on which they were directed to place identifying marks by the persons whom they had recognized at the live lineup. More or less the same procedure was followed with regard to the other witnesses who made "in-court" identifications of the appellants as the persons who had robbed them at pistol-point within a few days before or after the Romaguera robbery.

■ We note initially that we find no error in the district court's ruling relative to the admissibility of the December 19th lineup. The appellants were fully informed of their rights and made a voluntary written waiver of the right to have counsel present at the lineup.[2]

Although the district judge ultimately ruled that the lineup of December 21st should be suppressed because of appellants' lack of counsel and instructed the jury to consider only "the testimony as to a lineup conducted on December 19, 1968, and none other", we entertain some doubt as to the correctness of this ruling. Officer James Eaton, who was in charge of the later lineup testified unequivocally that he had explained to the appellants their rights with regard thereto and that they had orally waived right to counsel. He said that having knowledge of the prior written waiver, he felt it unnecessary to obtain a second one. The appellants themselves admitted having voluntarily, and with prop-

2. Neither lineup is attacked on the basis of want of due process. And we feel that such attack would, in any event, be groundless. The State showed by testimony of the officers who conducted the lineup on December 21st, as well as by those lay persons in attendance, that it was objectively conducted. There were six persons in the December 19th lineup and seven in that of December 21st. All were within close age range of the appellants, all were Negroes as were appellants, of similar build, et cetera. While we do not have a picture of the December 21st lineup, that of December 19th (which is in the record), demonstrates clearly the close likenesses of all of the persons displayed. When a request was made for certain language to be spoken, all persons in the lineup spoke the words. All of the persons present on December 21st testified that no suggestions were made to the viewers by those in charge, that the former were separated and did not confer with regard to their respective identifications, nor were the individual identifications revealed orally. There was no evidence, nor even suggestion, that the manner in which the lineups were conducted was in any way improper, other than the complaint that appellants were not again informed of their right to have counsel present at the lineup of December 21st.

er instructions, signed the first waiver. They denied, however, that they had been given any subsequent explanation of their rights or waived the presence of counsel in connection with their second appearance. They further conceded that they were not "forced" into the second lineup but that they felt there was nothing else for them to do but go when called. This explanation of their appearance at the lineup does not seem to be satisfactory inasmuch as they had, only two days before, been fully instructed as to their rights not to appear without an attorney if they so chose. Moreover, there are other discrepancies in their testimony which reduced its credibility.

, Under these circumstances we are not so sure but that their second appearance without any outward sign of remonstrance, constituted a voluntary waiver of counsel.

■ But we do not ground our decision on such consideration. Because, for reasons hereafter outlined, even assuming that it was essential for the police to obtain another written waiver of counsel for the second lineup, we do not believe that the "in-court" identifications were tainted by the witnesses' pre-trial identifications on December 21st. Moreover, we are of the opinion that the testimonial references to the pre-trial identifications of December 21st were harmless.

In State v. Singleton, 253 La. 18, 215 So.2d 838, we considered the effect of an

irregular pre-trial identification on a subsequent "in-court" identification. Therein we said:

"Under the decisions in United States v. Wade, supra; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, there seems to be no doubt that the pre-trial confrontation of appellants by the eyewitnesses to the crime prior to the appointment of their counsel constituted a violation of appellants' constitutional right to assistance of counsel at a critical stage of the proceeding. * * *

"In any case, the pre-trial confrontation conducted without appellants having counsel present to give them assistance is fatal to its legality under the views expressed in the above-cited cases. And this circumstance, conformably with the dictum of the United States Supreme Court, affects the admissibility in evidence of the 'in-court' identifications. For, by reason of the illegal pretrial identification, the 'in-court' identification may not be received in evidence as formerly, when objections to such evidence were regarded as affecting the weight rather than its admissibility, *unless the Court finds that the prosecution has established by convincing proof that such identifications are based on observations of the accused independent of and disassociated with the 'tainted' pre-*

*trial confrontation.* See State v. Allen, 251 La. 237, 203 So.2d 705, and Rivers v. United States, C.A.5 (1968), 400 F.2d 935." (Emphasis ours)

In this case, we are satisfied that the witnesses' "in-court" identifications were of an origin independent of the lineup of December 21st. The circumstances surrounding each of the holdups was of such nature as to give each witness ample time, under good lighting conditions, to observe at close range the appellant identified by him. Each testified as to the lasting impression created by the occasion of the armed robbery; and each testified that his "in-court" identification was based on his observation at the time of the robbery.

We find no error, therefore, in permitting the "in-court" identifications to be heard by the jury.

■ The objection to permitting reference to the December 21st lineup during the trial involves another consideration. As we said in State v. Singleton, supra, identifications made at a lineup when the accused is not represented by counsel and has not intelligently waived counsel are illegal, and it is improper to introduce evidence of such identification at the trial. However, if, through error, it is permitted to be shown, that fact is not, per se, ground for reversal of a conviction. In Gilbert v. California, supra, the court had on review a case in which evidence was introduced of identifications by witnesses at an illegal lineup. The court ruled that the error was not ground for reversal, per se, but that the rule announced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, should prevail in the illegal lineup cases, to the end that reversal would not occur if the court is "able to declare a belief that it was harmless beyond a reasonable doubt." And it remanded the cause to the California Supreme Court to make a determination of that issue.

■ The question posed for our decision, then, is whether after a review of the testimony as a whole, can it be said that introduction of evidence concerning the December 21st lineup was harmless error beyond a reasonable doubt? We have carefully considered the evidence and conclude that it was.

We find from the record that, in examining the witnesses concerning the December 21st lineup, the prosecutor asked them if they were present at such a lineup; if a photograph exhibited to them correctly depicted the scene of the lineup; if they, at the lineup, recognized among the persons shown, one or more of the men involved in the holdup; and, if they had, to place an identifying mark by the picture of the person recognized, which they did. They were specifically instructed in making the identification on the photograph, *not to name in court the person or persons identified on December 21st.* As we have

heretofore indicated, the judge suppressed the photograph of the lineup and instructed the jury not to consider the evidence relative to the December 21st lineup. Consequently, the jury did not view the picture on which the witnesses had placed their identifying marks. Under these circumstances, and in view of the strong independent "in-court" identification, along with the identifications from the picture of the December 19th lineup, we think that the mention of the December 21st lineup was, at best, harmless error.

We find, therefore, that there is no merit in Bills of Exceptions Nos. 1, 2 and 4.

■ Bill of Exceptions No. 3 was reserved to the court's requiring the appellants to stand ·for identification purposes at the request of the State. Counsel for Allen, in his brief to this Court and in oral argument here, stated that he was of the opinion that the bill was without merit and that he would abandon it. Counsel for Mixon, however, declared that he did not abandon it; but it is not mentioned in his brief, nor was it discussed during oral argument of the case.

Nevertheless, we have reviewed the complaint and have concluded that it is indeed without foundation. See State v. Roy, 220 La. 1017, 58 So.2d 323; State v. Robinson, 221 La. 19, 58 So.2d 408, cert. den. 344

U.S. 904, 73 S.Ct. 285, 97 L.Ed. 699. Also, in United States v. Wade, supra, the United States Supreme Court reaffirmed the observation made in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, that the privilege against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature. * * *"

Officer Ernest Winborne, a member of the New Orleans Police Department who took part in the apprehension of appellants on December 19, 1968, was called as a witness for the State. During his examination in chief he said that while he and his partner were cruising in a police car on the day in question, they were notified that there had been an armed robbery. Shortly thereafter they observed an automobile occupied by three Negro men which fit the description of a vehicle involved in the armed robbery. As they approached the vehicle with their blue lights flashing, the occupants of the other car tried unsuccessfully to evade the pursuing police vehicle. Ultimately the other automobile stopped and the suspects alighted therefrom. Officer Winborne then testified that "as we approached the vehicle we observed the shorter subject appear to throw something under the seat," and that, thereafter, they found a thirty-eight revolver in the car.

At this point defense counsel objected to the above-quoted testimony regarding the officer's observing that the subject appeared to throw something under the seat. Bill of Exceptions No. 5 was reserved to the court's overruling the objection.

Counsel for Allen has abandoned this bill also, but Mixon's counsel, as he did in connection with Bill of Exceptions No. 3, stated during oral argument that he was not abandoning any of the bills. However, inasmuch as he has failed to brief the bill, and did not discuss it on oral argument, we are at a loss to discern the basis for the objection. It appears, from a comment made at the time the objection was made, that what counsel probably had in mind was that it was improper for the officer to testify that he saw Allen throw "something", when he was, at that time, unaware of the identity of the object. The bill is without merit.

Bill of Exceptions No. 6 was reserved to the court's overruling a motion for a new trial. In the motion it was urged that the bills of exceptions reserved during the trial show that prejudicial error had been committed. These alleged errors have already been considered by us in connection with the bills of exceptions themselves and require no further discussion.

It was further urged that the verdict is contrary to the law and evidence and that the ends of justice would be best served by the granting of a new trial. These allegations present nothing for review.

For the reasons assigned the convictions and sentences are affirmed.

BARHAM, J., concurs with written reasons.

BARHAM, Justice (concurring).

This court has again resorted to the federal harmless error doctrine, asking: " * * * after a review of the testimony as a whole, can it be said that introduction of evidence concerning the December 21st lineup was harmless error beyond a reasonable doubt? We have carefully considered the evidence and conclude that it was."

I have no argument to make against the federal harmless error doctrine. However, if we are to employ this doctrine, which requires a review of the entire transcript to determine whether there is other independent untainted evidence which will supplant the evidence admitted in error, then we must afford a procedural device for reviewing the total record in every case, or we do not equally apply the law. See my dissents in State v. Hopper, 253 La. 439, 218 So.2d 551 (1969), and State v. Anderson, 254 La. 1107, 229 So.2d 329 (1969) ; see also my concurring opinion in State v. McGregor, 257 La. 956, 244 So.2d 846 (1971).

Our law does not require a transcript of testimony in every case (at least outside the Parish of Orleans, and this in itself appears to be a denial of equal protection), and therefore those who have not reserved and perfected bills which require the entire transcript are afforded different review for harmless error from others, such as the defendants in this case, who have attached the complete record under the bill of exception reserved to the overruling of their motion for new trial. Those with a complete transcript of testimony, such as these defendants, are subjected to a more onerous harmless error doctrine than is the appellant with a meager record.

This court continually writes opinions which require strict compliance with its interpretation of the requirement for perfected bills of exception so as to limit review, which might favorably affect a defendant if total review were had. Here, in order to maintain a conviction under harmless error, it extends review to the entire record of a proceeding, both fact and law. We do not extend the benefits of such liberal review to all parties. I believe this court has the power to correct both errors. First, we could provide for a review of properly reserved bills when the record is before us and our attention is directed to them although there is some technical flaw in the perfected formal bill of exception. Second, we could judicially mandate that a full transcript of testimony be a part of every appellate record as an equal protection device *if* we are going to look for harmless error based upon review of the entirety of the evidence to see whether there is sufficient untainted evidence to sustain the conviction. At least the Legislature should address itself to this problem in the absence of affirmative steps by this court to afford relief.

I respectfully concur.