259 So.2d 6

STATE of Louisiana

v.

Edward PIERRE.

No. 51327.

Feb. 21, 1972.

Rehearing Denied March 27, 1972.

Tate, J., concurred on theory that police made reasonable efforts to assure presence of counsel at the lineup, Dixon, J., concurred and filed opinion.

James J. Gleason, III, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.

SANDERS, Justice.

In this criminal prosecution for armed robbery of a New Orleans drugstore, the jury found the defendant, Edward Pierre, guilty. The trial judge sentenced him to a term of 60 years in the Louisiana State Penitentiary.[1] The defendant has appealed, relying upon thirteen bills of exceptions reserved in the trial court.

The State's theory of the case is that Edward Pierre and John Lee James parked the Thunderbird convertible automobile in which they were riding near the Tusa Rexall Drugstore. Miss Dorothy Mitchell, the owner of a nearby florist shop, became suspicious as she observed their actions

1. The statutory sentence for armed robbery is not less than 5 years and not more than 99 years, without benefit of parole, probation, or suspension of sentence. See LSA–R.S. 14:64, as amended.

and jotted down a description of the car and the license number.

James entered the drugstore, bought a package of cigarettes, looked around, and returned to the car. Pierre, wearing a broad-brimmed hat and sunglasses, then entered the drugstore, drew a gun, and robbed Urban Martinez, the manager, of about $258.00. Pierre hurriedly left the store and rejoined his companion, who was waiting in the Thunderbird with the motor running. Martinez ran from the store in time to see the two drive away.

With the license number and description of the car, the police investigation soon led to the arrest of James and Pierre. A week after the arrest, Martinez identified Pierre in a police lineup. The state jointly charged James and Pierre with the robbery, but the court ordered separate trials.

### BILLS OF EXCEPTIONS NOS.
### 1, 2, and 11:
*Admission of the Lineup Identification.*

Before trial, the defendant filed a motion to suppress the lineup identification, on the ground the lineup was held without legal representation for the defendant. Upon the overruling of the motion, defendant reserved Bill of Exceptions No. 1. Bills of Exceptions Nos. 2 and 11 were reserved to the overruling of defense objections to the admission at the trial of the lineup identification and to the in-court

identification of the defendant by the drugstore manager.

The record reflects that Pierre signed a waiver of counsel at the lineup. Before the lineup was held, however, the defendant engaged an attorney to represent him. Both the defendant and his attorney then advised the police that the attorney intended to be present at any lineup.

About noon on the date of the lineup, Officer Krinke called defendant's attorney and requested him to be present for a lineup at one o'clock. The attorney advised the police he would be unable to come, but would attempt to send an associate. The police also attempted to contact the associate, but were unable to do so. After waiting until after 3:00 p. m., they proceeded with the lineup, where Pierre was identified as the robber by Urban Martinez, the drugstore manager.

The lineup was conducted in accordance with standard procedures in the New Orleans Police Department. Edward Pierre was allowed to pick his own number and place and stand in a line with five other black men of similar age and physical characteristics. All were dressed in blue coveralls. The lighting was standard for each person in the lineup. No one spoke to or aided Martinez as he identified Pierre. The State offered a photograph of the lineup in evidence (Exhibit S–1).[2]

---

2.  Prior to the lineup, Urban Martinez had been shown five photographs, including that of Pierre, by the police. He tentatively identified the photograph of Pierre,

Despite the absence of counsel, the trial judge declined to suppress the lineup identification, holding that the procedures for the lineup, as reconstructed, were fair and impartial and satisfied the constitutional requirements.

■ We are likewise impressed with the fairness of the lineup procedures. The standard procedures under which the lineup was conducted eliminated all risk of abuse and obviated the need for defense counsel.[3] The lineup here fully satisfied the criteria announced by the United States Supreme Court in the landmark case of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), when it stated:

"Legislative or other regulations, such as those of local police departments, which eliminate the risks of abuse and unintentional suggestion at lineup proceedings and the impediments to meaningful confrontation at trial may also remove the basis for regarding the stage as 'critical.'" 388 U.S. at 239, 87 S.Ct. at 1938.

■ In the event, however, we are in error in holding that the abuse-free regulations here satisfied the constitutional requirements, it seems quite clear that the in-court identification by Urban Martinez had an independent basis. During the robbery, he observed the culprit for three or four minutes in the well-lighted store and later gave the investigating officers a description. Based on his observation during the robbery, he was able to identify the defendant in the courtroom without regard to the lineup. This identification was corroborated by the testimony of John Lee James, the automobile driver, who confirmed that Pierre entered the drugstore about the time of the crime. Thus, the admission of the lineup identification does not vitiate the conviction. See State v. Smith, 260 La. 185, 255 So.2d 734 (1971); State v. Mixon, 258 La. 835, 248 So.2d 307 (1971); State v. Pratt, 255 La. 919, 233 So.2d 883 (1970); State v. Singleton, 253 La. 18, 215 So.2d 838 (1968); State v. Allen, 251 La. 237, 203 So.2d 705 (1967).

For the reasons assigned, these bills of exceptions lack merit.

BILLS OF EXCEPTIONS·NOS. 3 and 4:

*In-court Identification Testimony.*

Defendant reserved these two bills when the trial judge allowed Joseph Fazzio, a clerk in the drugstore, to testify that the

as resembling the robber, but stated he would like to see the individual before making a positive identification. See Exhibits S–2, S–3, S–4, S–5, S–6.

3. Apart from the presence of counsel, the lineup fully complied with the recommended standards formulated by the Council of Judges of the National Council on Crime and Delinquency. See Model Rules of Court on Police Action From Arrest to Arraignment, National Council on Crime and Delinquency (1969), p. 17.

accused resembled the person who robbed the drugstore, although he could not be "a hundred percent accurate" because the robber was wearing a big straw hat and sunglasses.

The defense objection was that testimony short of positive identification is inadmissible. Defense counsel now concedes, however, that the bill of exceptions lacks substance under our recent decision in State v. Franklin, 255 La. 830, 233 So.2d 532 (1970), where we held:

> "We find no merit in the bill. The jury was made well aware that the witness was not making a positive identification of the accused as one of the persons seen by him, but only that he fit the general description of such persons. It was, we think, relevant circumstantial evidence, and that the objection goes to the weight rather than the admissibility of the testimony. It differs little, if any, from testimony as to the color or kind of apparel worn by a person at the scene of the crime when that is material, although circumstantial only."

## BILL OF EXCEPTIONS NOS. 5, 6, 7 and 8:

### Testimony Concerning John Lee James, the Alleged Accomplice.

The defendant reserved Bills 5 and 6 when John Lee James was brought into the courtroom and identified by Joseph Fazzio, the drugstore clerk, as resembling the man who entered the drugstore about five minutes before the robbery. He reserved Bill 7 when the State was allowed to call James into the courtroom while Miss Mitchell was on the stand and she was allowed to testify that he resembled the driver of the Thunderbird convertible. Bill of Exceptions 8 was reserved when James was exhibited to Detective John Gray, another witness, for identification and a description of the circumstances surrounding his arrest.

The primary question raised by these bills is one of relevancy. Under LSA–R.S. 15:435, in order to be admissible at the trial, evidence must be relevant. However, on the question of relevancy, much discretion is vested in the trial judge. State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970); State v. Walker, 204 La. 523, 15 So.2d 874 (1943); State v. Stracner, 190 La. 457, 182 So. 571 (1938).

Although James was not on trial, his case having been severed from that of Pierre, his activities at the scene of the crime formed part of the continuous transaction leading up to the pistol-robbery. The activities of James were closely interwoven with those of the present defendant. Hence, we find no error in the admission of this evidence.

## BILL OF EXCEPTIONS NOS. 9 and 10:

### Testimony of John Lee James.

John Lee James, the co-defendant whose trial had been severed, was called as a wit-

ness by the State. Before he was questioned, the trial judge explained his rights against self-incrimination under the Fifth Amendment of the United States Constitution. The trial judge advised him that he had a right to refuse to answer any question that would tend to incriminate him. The witness' own attorney was present in the courtroom for consultation with his client as to the incriminatory nature of the questions propounded.

The defendant reserved Bill of Exceptions No. 9 to this procedure, based on the following grounds:

(1) It allowed the witness' attorney to invoke the privilege against self-incrimination for the client, although the privilege is personal to the witness. See State v. Brown, 221 La. 394, 59 So.2d 431 (1952).

(2) The procedure failed to take into account the rule that when the witness has answered incriminating questions, he opens the door to a full disclosure.

(3) The procedure inhibits effective cross-examination by the defense.

██ We find nothing in the procedure itself that violates the defendant's rights. Since the' witness was also charged with the crime, it was within the court's discretion to allow him to consult with his attorney during interrogation. The advice from his attorney did not destroy the personal nature of the privilege. Nor did the procedure foreclose a later claim that the privilege had been waived as to certain facts by a prior disclosure. See Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951). The procedure likewise did not inhibit cross-examination, because the judge retained the right to rule on specific questions propounded by defense counsel. The procedure adopted by the trial judge finds support in State v. Gambino, 221 La. 1039, 61 So.2d 732 (1952), where we held that a party charged jointly with the defendant, but not on trial, could be called as a witness since he could claim his privilege against self-incrimination when asked a specific question that tended to incriminate him.

Defendant reserved Bill of Exceptions No. 10 under the following circumstances. James testified that he owned a blue Thunderbird convertible with license number 91B790; that on the morning of July 20, 1969, he and Edward Pierre drove in his Thunderbird to Fillmore and Elysian Fields; that at this time Pierre was wearing a Panama type hat and sunglasses; that at about 10:45 a. m. the witness went into the drugstore at 5215 Elysian Fields and bought some cigarettes; that, after he returned, Pierre left the car ·and returned in about ten minutes from the direction of the drugstore; that at no time did he see Pierre in possession of a gun; and that on July 21 the police arrested him. Defense

counsel cross-examined James extensively. Upon an objection of self-incrimination, James refused to say how much of his newspaper he had read during the time Pierre was away from the car.

The trial judge upheld the witness' refusal to answer the question on his claim of self-incrimination.

■ We are doubtful that the question can properly be classified as incriminating. Nonetheless, the ruling of trial judge was correct, because the information sought was irrelevant. On cross-examination, James had already stated that Pierre was gone from the car from 5 to 15 minutes.

BILL OF EXCEPTIONS NO. 12:

*Charge to the Jury as to Flight.*

Defendant reserved Bill of Exceptions 12 to that portion of the trial judges charge as to flight as follows:

" . . . The Court charges you, gentlemen, that the flight of an escaped accused, or escape, or attempt to escape on the part of the accused, taken alone does not raise a legal presumption of guilt. The fact of an accused having fled or having actually escaped from custody, if proved, are merely facts in the case to be taken into consideration by the Jury in connection with all the other facts in the case in determining the probabilities for or against the guilt of the accused. Flight or an attempt to escape may be prompted by a sense of guilt, but not necessarily so. If you find that the accused attempted to escape or did escape, it is for you to consider what was his motive of flight or the attempt to escape, or the escape. . . . "

Defendant made the following objection:

"I object to the giving of the Charge by the Court as to flight. There was no testimony as to flight in this case. As I understand it, flight is when the defendant flees apprehension by the police or attempts to flee the police when they attempt to arrest him."

In his *Per Curiam,* the trial judge states:

"The reason for my overruling defense counsel's objection and for charging the jury as to flight was based upon the fact situation presented from the testimony during the trial of the case. The testimony revealed that the defendant, Edward Pierre, made a hurried departure from the scene of the crime . . .

"In my opinion the testimony established a fact situation that justified the Court in charging the jury on flight in order to particularly point out to the jury that this factual situation should be taken into consideration by the jury in connection with all of the other facts of the said case in order to determine the probability for or against the guilt of the defendant, Edward Pierre."

We agree with the trial judge. Article 802 of the Louisiana Code of Criminal Procedure provides that the judge shall charge the jury as to the law applicable to the case.

Urban Martinez, the drugstore manager, testified the defendant left the drugstore "in a good deal of haste," after inquiring whether there was a rear door. Joseph Fazzio, the clerk, testified that he left at "a fast pace." Miss Mitchell, the florist, testified, "I saw the other man running, and get in the car." The testimony also showed that the motor of the car was already running when the robber returned to it and finally left the scene.

■■ The testimony, in our opinion, is sufficient to justify a charge as to the flight. The flight doctrine is not restricted to instances in which a person evades an imminent arrest by law enforcement officers or escapes from legal custody. It is equally applicable when a person flees from the scene of the crime.

The controlling rule is correctly stated in 29 Am.Jur.2d, Evidence § 280, pp. 329–330:

"The fact that a defendant after the commission of a crime concealed himself or fled from the vicinity where the crime was committed, with knowledge that he was likely to be arrested for the crime or charged with its commission, may be shown as a circumstance tending to indicate guilt Flight, concealment, or analogous conduct, when unexplained, indicates a guilty conscience or, as it is sometimes said, consciousness of guilt, for it is not to be supposed that one who is innocent and conscious of that fact would flee. Such evidence is not confined to cases where the offense was committed secretly, but is equally admissible where the crime was committed openly and in the presence of witnesses."

See also State v. Johnson, 249 La. 950, 192 So.2d 135 (1966); State v. Neal, 231 La. 1048, 93 So.2d 554 (1957).

The Bill of Exceptions is without merit.

BILL OF EXCEPTIONS NO. 13:

*Overruling Motion for a New Trial.*

The final bill of exceptions was reserved to the overruling of the motion for a new trial. The motion reurges all previous bills of exceptions and alleges that the jury verdict is contrary to the law and the evidence. These allegations present nothing further for review. See State v. Biagas, 260 La. 69, 255 So.2d 77 (1971); State v. Ford, 259 La. 1037, 254 So.2d 457 (1971).

The other complaints in the motion for a new trial relating to pre-trial discovery and the denial of the challenge of a juror for cause are belatedly raised and are without merit. See LSA–C.Cr.P. Art. 841.

For the reasons assigned, the conviction and sentence are affirmed.

BARHAM, J., concurs in the decree.

TATE, J., concurs. The police made reasonable efforts to assure the presence of counsel at the lineup.

DIXON, Justice (concurring).

I must respectfully concur.

I cannot agree with the majority's discussion of Bill of Exceptions No. 12. I do not understand that there was any evidence of escape, which was the subject of the trial judge's charge complained of in Bill of Exceptions No. 12. Nevertheless, the record indicates that there was no miscarriage of justice.