294 So.2d 503 (1974)
STATE of Louisiana
v.
Johnny BROOKS and Robert Dorsey.
No. 54222.
Supreme Court of Louisiana.
April 29, 1974.
*504 Robert F. Fleming, Jr., Orleans Indigent Defender Program, New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
After a trial by jury, appellants Johnny Brooks and Robert Dorsey were convicted of armed robbery, La.R.S. 14:64, and were sentenced to serve twenty years at hard labor at the state penitentiary. Both defendants have appealed relying upon seven jointly reserved bills of exceptions.
On November 20, 1971, at approximately 1:40 a.m., John Gutilla, a cab driver, was cruising near the corner of St. Charles and Common Streets in downtown New Orleans. The defendant, Dorsey, hailed him to stop, and he and his companion Brooks got into the cab. They then instructed the driver to go to a location on Sixth Street. When they reached a point near their destination at Tchoupitoulas and Dufossat and the driver stopped, Brooks immediately jumped into the front seat armed with a knife, causing Gutilla to jump out of the cab and start running. Dorsey pursued Gutilla and grabbed him. Then the defendants, both brandishing knives, robbed him. Seeing a car approach, Gutilla broke away and called to the occupants of the car that he had just been robbed; the car occupants happened to be Officers Poissenot and Krinke, New Orleans Police Department detectives. Officer Poissenot immediately seized Brooks and removed a steak knife from his pocket. Officer Krinke chased Dorsey, and, after losing sight of him momentarily, discovered him hiding in some nearby weeds. He then discovered the money in Dorsey's pocket and the knife on the ground nearby. Minutes after the crime, Gutilla positively identified defendants as the two men who had just robbed him.

Bill 1
On the day of the trial, after the jury was sworn, the defendants filed a rule to show cause why a lineup should not be conducted. In his motion, defense counsel alleged that where the victim had not seen the alleged assailants since the time the crime was committed, an in-court identification would prejudice their rights and deny them due process as the victim would naturally identify the men sitting before the bar of the court. After argument, the trial judge denied the motion and the defendants reserved this bill.
We know of no law nor do appellants cite any jurisprudence granting them the right to a lineup prior to an in-court identification. Defense counsel did not file a motion to suppress the in-field identification; nor was he prevented from cross-examining the victim at the trial as to the basis for his in-court identification.
Therefore, this bill is without merit.

*505 Bill 2

During voir dire examination when a prospective juror, Frank Harris, indicated that he had previously been the victim of a mugging, defense counsel proceeded to ask him the race of his assailant. The State's objection to this question was sustained and the defendants reserved this bill of exceptions.
The defendants were blacks. The trial judge in his per curiam stated that he sustained the objection because the question was irrelevant and "sought to go into extraneous matters."
Assuming that the trial judge erred in preventing defense counsel from uncovering a potential cause for prejudice against blacks, the error is harmless. An examination of the minutes reveals that Frank Harris was not one of the jurors ultimately selected. The record does not disclose how he was excused or by whom he was excused. And there is no allegation that the defendants exhausted all of their peremptory challenges. La.Code of Crim.Proc. art. 800.
There is no reversible error demonstrated by the record.

Bill 3
The trial judge overruled defense counsel's objection when the assistant district attorney asked the victim if the body features of the two men who stopped his cab resembled those of the defendants. Defense counsel argued that the question was prejudicial and improper since the witness had been looking at the defendants in court that morning and had stated on cross-examination that he could not identify the faces of the men who robbed him, but only their clothes.
This bill is wholly without merit. The witness had previously positively identified the defendants by their clothes and their faces as the men who had robbed him. Furthermore, to strengthen the witness's identification, this question was proper. State v. Pierre, 261 La. 42, 259 So.2d 6 (1972); State v. Franklin, 255 La. 830, 233 So.2d 532 (1970). The objection is properly directed to the weight of the evidence, not its admissibility. The weight of the evidence is a question for the jury.

Bill 4
The State offered into evidence S-3, a bag containing three five-dollar bills, four one-dollar bills, and one dollar and eight cents in change, the money allegedly recovered from Dorsey. The defense objected arguing that the exhibit was not properly marked to perfect the chain of connexity. The Court overruled the objection and admitted the money in evidence; whereupon the defendants reserved this bill.
The rule concerning the admission of objects requires that a proper foundation be laid and that the objects be identified or authenticated as the objects they purport to be; they must be shown to be connected with the crime or the accused. Identification, however, is not required to be absolute, certain, or wholly unqualified, and where there is some evidence for such purpose, the objections to its sufficiency go to the weight rather than the admissibility of the objects in question. State v. Gladden, 260 La. 735, 257 So.2d 388 (1972); 22 A C.J.S. Criminal Law ¶ 709 et seq.. See also State v. Asher, La., 294 So.2d 223, decided this day.
The test is whether or not the object is the one connected with the case. State v. Franks, 284 So.2d 584 (La.1973); State v. Howard, 283 So.2d 199 (La.1973).
The victim testified he knew that when he was robbed he had exactly twenty dollars, consisting of three five-dollar bills, four one-dollar bills, and some change. He knew this because he had just counted his money minutes before the robbery occurred. The additional eight cents was not his. The arresting officer, Detective Krinke, testified that he recognized the *506 money and its denominations as being that which he took from the pocket of Dorsey when he arrested him.
Therefore, we find no error committed by the trial judge.

Bill 5
During the testimony of Detective Krinke, called as a defense witness, defense counsel, on discovering an apparent inconsistency, moved that the court reporter read the witness's answer to a similar question when he testified as a witness for the State. The district attorney objected stating that counsel was impeaching his own witness and that jurors must remember what they heard. When the Court denied the motion, defense counsel reserved this bill.
On direct examination by defense counsel, Detective Krinke stated that the knife he recovered from Dorsey was the dark handled one. Defense counsel then confronted him with the fact that he had earlier testified on direct examination by the district attorney that it was the light handled knife. The officer then answered: "If I did, sir, I was mistaken; because it was the dark handled knife."
A review of the transcript reveals that the confusion existed only in the mind of defense counsel. The trial judge did not abuse his discretion in refusing to permit the reading of the prior testimony. To have granted the motion would have caused further confusion and was unnecessary because the officer admitted that if he had so testified, he was mistaken.
This bill is without merit.

Bill 6
This bill was reserved when the trial judge allowed the State, on rebuttal, to impeach the testimony of the defendant Dorsey, who had taken the stand on his own behalf and testified that he had only been passing by when the robbery occurred. On cross-examination, Dorsey did not admit making any statements to the officers at the time of his arrest. The assistant district attorney then advised Dorsey that he was going to impeach his testimony and asked Dorsey if he had told the officers at the time of his arrest, "Man, you got me clean; you saw me on the corner do it." Dorsey denied making such a statement.
On rebuttal, the State asked Officer Poissenot if the defendant Dorsey made any statements after being advised of his rights. Defense counsel objected to any testimony along these lines because it was not brought out by the defendant on direct examination but on cross. He argued that rebuttal should be directed to what the witness asserted on his own behalf. When the objection was overruled, the officer stated that Dorsey had made that statement to him.
The question was a proper use of impeachment by a prior inconsistent statement. La.R.S. 15:486, La.R.S. 15:493. It was not impeachment as to collateral facts or irrelevant matters prohibited under Section 494 of Title 15 of the Revised Statutes.
A State may show on rebuttal that testimony given by a defendant is untrue. State v. St. Amand, 274 So.2d 179 (La. 1973). The State has the right to rebut testimony elicited on cross-examination of the accused as a witness in his own behalf. State v. Heidelberg, 120 La. 300, 45 So. 256 (1908). See also U. S. v. Nathan, 476 F.2d 456 (2nd Cir. 1973); Commonwealth v. Hickman, 453 Pa. 427, 309 A.2d 564 (1973); People v. Bennett, 46 Mich. App. 598, 208 N.W.2d 624 (1973).
Therefore, this bill is without merit.

Bill 7
This bill was reserved to the denial of defendant's motion for a new trial. The motion was based on the bills of exceptions *507 reserved and on the allegation that the verdict is contrary to the law and the evidence. This allegation presents nothing for review. State v. Barnard, 287 So.2d 770 (La. 1974).
For the reasons assigned, the convictions and sentences are affirmed.
BARHAM, J., concurs.