229 So.2d 76

**STATE of Louisiana**

**v.**

**Billy Carl BRUMFIELD.**

**No. 49673.**

Nov. 10, 1969.

Rehearing Denied Dec. 15, 1969.

Delos R. Johnson, Jr., James D. Johnson, Jr., Franklinton, Max Mercer, Slidell, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., for appellee.

HAMLIN, Justice:

Billy Carl Brumfield was indicted for the crime of manslaughter (LSA-R.S. 14:31), tried, convicted, and sentenced to serve fifteen years in the Louisiana State Penitentiary. He appealed to this Court and now presents for our consideration two specifications of error [1] based upon some of the bills of exceptions reserved during trial. All bills of exceptions not

---

[1] 1. The Court erred in allowing the introduction of a confession against the defendant when the State had refused to produce in advance of the trial a written confession which was in its possession, and which had been properly demanded by the defendant.

2. The court erred in refusing to instruct the jury that the verdict must be unanimous.

pertinent to the alleged errors have been abandoned.

## BILLS OF EXCEPTIONS
## NOS. 2, 5, 9 and 10.

The above bills of exceptions pertain to specification of error No. 1.

Bill of Exceptions No. 2 was reserved to the trial court's refusal of a prayer for oyer for pre-trial inspection of photostatic copies of any and all written and oral statements, admissions and/or confessions made by Billy Carl Brumfield.

Bill of Exceptions No. 5 was reserved to the trial court's overruling defendant's objection to the introduction in evidence of an oral confession purportedly given by defendant.

Bill of Exceptions No. 9 was reserved to the trial court's overruling defendant's motion in arrest of judgment.

Bill of Exceptions No. 10 was reserved to the trial court's overruling defendant's motion for a new trial.

The testimony attached to the instant bills reflects that defendant was arrested on Sunday, September 24, 1967, the day after the commission of the instant offense. Subsequent to arrest, he was questioned by Deputy Sheriffs Arlie O. Passman and Frank S. Bickham, a Washington Parish Juvenile Officer at the time of trial; they testified that they were of the opinion that defendant was intoxicated and for that reason made no notes of his statements on September 24, 1967.

The next day, September 25, 1967, the two deputies questioned the defendant after apprising him of all of his constitutional rights and receiving from him a signed statement that he did not desire counsel and was aware of his constitutional rights. Officer Bickham took written notes; however, the testimony of the two officers affirms that no written statement was made by the defendant, and that the written notes were taken on September 25th, not September 24th. The notes were reduced to typewritten form by Mrs. Nell Stafford, an employee in the Washington Parish Sheriff's Office. At the foot of the typewritten notes is typed, "/s/ Billy C. Brumfield." Mrs. Stafford testified that no signature appeared on the hand-written notes she copied. The officers corroborated her testimony; they gave no reason for the appearance of the typewritten signature and attached no importance to it. The original notes were destroyed and, therefore, not available for trial; neither the officers nor Mrs. Stafford knew definitely who had destroyed them. Destruction of notes was a usual practice in the Washington Parish Sheriff's Office.

The trial court permitted the typewritten notes to be introduced in evidence as an oral confession. It stated:

"As to the freeness and voluntariness of the statement, there is no question in

the Court's mind that the defendant was advised of his Constitutional rights. If a statement had been taken from him while he was intoxicated, then more than likely you would have a situation where it would not be free and voluntary but I think what you have is a question of fact as to that because both of the Officers testified that they did not take a statement on Sunday, that they came back in on Monday and after again advising him of his rights, took a statement at that time. I think that Mrs. Stafford is probably mistaken as to the time that she typed it, which she testified herself that she could be, so the Court holds that the statement given was free and voluntarily given and that the defendant was advised of his Constitutional rights. The

apparent second contention is that there was a written confession I would presume, rather than a statement, but the only evidence that the Court has before it is to show that there were notes taken but there was no written confession signed by the defendant. There is merely an assertion by defendant's counsel that this occurred but there was no evidence introduced either through the defendant himself or by any other means to show there is even an allegation on his part that there was a signed statement. Therefore the Court thinks the only evidence it has before it shows that there was no signed confession or no written confession as such so the Court will treat it as an oral confession, freely and voluntarily given and will allow it to be introduced." [2]

2. The typewritten notes or statement recite:

"My name is Billy Carl Brumfield. I am 38 years old. I live at Rt. 3, Franklinton, La. The statement I am about to give Deputies Frank Bickham and Arlie Passman is true and correct to the best of my knowledge.

"Me and Curtis have been drunk for a week or more, going to Arcola every day to get wine. We just kept getting drunker and drunker. Saturday morning we went to Arcola and got 3 5ths of wine. We sat around the trailer Saturday and drank the wine. Curtis went to Warnerton around noon and got 12 cans of Falstaff beer. I stayed at the trailer. After he returned we drank the beer. After dinner we began talking about me going to get something to drink for the weekend. He wanted me to go to Hut's Place in Black Jack to get something

to drink but I wanted to go to Arcola, so we then got into an argument about where for me to go get the drinks. I told him if I was going after the stuff, I would go to Arcola or Tangipahoa. Curtis got up and wanted to take the money he had gave me and refused to let me use the truck. I grabbed Curtis and choked him until he gave up and quit fighting me. Then Curtis jumped up and left walking toward Carl Brumfield's house, my father. I got in the truck and left and stopped at Erwin's Store to get gas. I called my daddy by phone and asked my daddy if Curtis had made charges against me and my daddy said he did. I didn't believe he had so I went on out the $5000.00 Road to Grace McClendon's and used the telephone again to call my daddy. My daddy answered the phone and after finding out it was me calling, he hung up and wouldn't talk

Defendant took the witness stand during trial in the presence of the jury, and his testimony on direct-examination is as follows:

"Q. Did you sign a statement, a written statement to the Sheriff's Department? Did you sign a statement at any time?

to me. I then left and went to Tate's Bar in Tangipahoa. I bought 4 5ths of wine and a carton 6 pack of Falstaff beer. I left there and headed back toward home, stopping a time or two on the side of the road to drink a beer. Then I drove to the trailer and it was getting dark, instead of parking in the front I drove around to the back, afraid charges had been filed against me. I drove the truck too far and got stuck. I left the truck. I went to the trailer to give Curtis his wine. I wasn't mad. Curtis was not at the trailer so I went back and tried to get the truck out. I sat in the truck and drank the rest of my beer and lay down and went to sleep. I woke up at 9:30 or 10:00 p. m. I went back to the trailer and Curtis was setting outside in the double white chair. I sat down with him in the chair. We got in an argument about me taking the truck and bogging it down. Then we got in a scrap. We both stood up. He tried to hit me, that is when I hit him in the face twice around mouth and nose with a karate chop. Then I must have hit him with a piece of stick or pipe about the face. He then sat back down. I left and went back toward the truck. I walked to the pond and threw something in the pond. It must have been the object that I had hit Curt with. Then I went to where I had my wine hid in the woods. I struck several matches before I found my wine. I opened one bottle and drank about ¼ of a 5th. I saw Curtis from where I was get up and go into the trailer. I went to the truck and lay down and went to sleep. I woke up as it was getting day

"A. I signed a statement that they took from me of the facts that I gave to them, about two pages of it, I signed it.

"Q. Did you, Billy Carl, is that your signature?

"A. Yes sir.

light, went to the trailer, stuck my head in the door and called Curtis and he didn't answer me. So I went into the bathroom. As I opened the bathroom door I saw Curtis in the bathtub in a sitting position. I pulled him out of the tub and shook him trying to wake him up. I said "Wake up Curtis. Let me put you to bed." As I pulled him out of the tub he just pitched forward. I got him by the feet and pulled him to the bedroom. I decided I could get him in bed so I tried again to wake him up. That is when I discovered he was dead. I went outside as fast as I could. I didn't know where to go so I thought of Boyd Thigpen, so I went to his house through the pipe line. Boyd raised such a ruckus until I left and went to Clyde Walter's and told him what had happened. I asked Clyde to take me to my daddy's. So we got into his car and he wanted to stop at the trailer to see if Curtis was really dead. Clyde went in the trailer. I stayed at the car. Clyde came back and said he thought Curtis was dead that we had better go to my daddy's. We both told daddy and mama that Curtis was dead. We went in the house and Clyde called the Sheriff's office. Me and Clyde got back in his car and went back to the trailer where we met Deputies Bickham and Sharp. I was arrested at this time and brought to jail by the City Police.

"I have read the above statement and it is true and correct to the best of my knowledge.

"/s/ Billy C. Brumfield"

"Q. Did you sign it like that? Is that your normal signature?

"A. That is my normal signature.

" * * *

"Q. When did you give the Sheriff the statement?

"A. To the best of my knowledge about 10 o'clock on Sunday morning.

"Q. How long were you questioned? Do you recall how long you were questioned?

"A. Not exactly sir, but I would say roughly two hours.

"Q. When you gave your statement, did the Sheriff Passman or Bickham, who was doing most of the talking?

"A. Mr. Passman.

"Q. Was he making any statements to you?

"A. Yes sir.

"Q. Would you tell the Court and the Jury what Mr. Passman was saying?

"A. He kept asking me over and over did I know the difference between murder and manslaughter and if I cooperated with them, I might get manslaughter which is a lesser charge. I demanded a lawyer, I begged for a lawyer, they refused me a lawyer, I asked them to let me call a lawyer.

"Q. What kind of paper was that written statement that you made on?

"A. It was on a yellow piece of paper like Mr. Erwin has there.

"Q. Whose presence did you sign it in?

"A. In the presence of Frank Bickham and Arlie Passman."

On cross-examination, the defendant testified:

"Q. But still you signed this on Monday when you gave the statement?

"A. That was the first thing I signed, that white piece of paper. [waiver of rights]

"Q. On Monday?

"A. On Sunday.

"Q. You signed it Sunday?

"A. Yes sir.

"Q. Do you deny that you gave them a statement in this room on Monday?

"A. I do.

" * * *

"Q. Were you in any condition to give a statement on Sunday morning at 10 o'clock?

"A. That, I don't know sir, they took it anyway."

The record shows that the typewritten form of the notes was not read to the jury. The defense does not contend that

the typewritten notes were passed to the jury for its observation.

During trial the State interrogated Officers Bickham and Passman as to defendant's words allegedly spoken to them on September 25, 1967. The officers refreshed their memories from the typewritten notes and gave oral statements with respect to what the defendant had told them concerning the commission of the crime. Counsel for the defendant cross-examined the officers; at that time, the typewritten notes were available to them as a result of the trial court's having permitted the oral confession to be testified to. The record shows that defense counsel did examine the notes. Following the testimony of the officers, the defendant gave his testimony quoted supra.

Counsel for the defendant contend that the trial court erred in admitting, over the objection of the defendant, an alleged oral confession which had the effect of allowing the State to get before the jury the written confession (alleged to be such by counsel) of the defendant. They further contend that the State failed to lay a proper predicate for the introduction of the oral confession. Counsel still further contend that assuming the notes were admissible in evidence, they were admissible only in their written form and not through the testimony of the investigating officers.

We find that a proper predicate was laid for the admission of the oral confession or typewritten notes in evidence. Officers Bickham and Passman testified, supra, that the defendant was instructed as to his constitutional rights and signed a waiver of his right to counsel. There is no contradiction of their testimony that defendant understood the nature of the instructions when signing the waiver; no testimony as to threats or promises was offered at the hearing as to the admissibility of the typewritten notes. We find that defendant's constitutional rights were not violated, and that there was a compliance with legal requirements. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

We do not find that the trial judge abused his discretion in admitting the typewritten notes in evidence as an oral confession. His reasons, supra, justify this finding. Three witnesses—Officers Bickham and Passman for the State, and Mrs. Stafford for the defendant—testified at the hearing as to the admissibility of the typewritten notes in evidence. As stated supra, the officers affirmatively testified that the defendant gave neither a written statement nor a signed confession; no contradictory evidence was offered. The gist of Mrs. Stafford's testimony was to the effect that she typed notes. There was extensive direct-examination and cross-examination at the hearing; argument was

not limited. Under the circumstances, we do not find that the trial judge committed error.

■ Having found that the typewritten notes were not erroneously admitted in evidence as an oral confession, we do not find that the defendant was entitled to an inspection of the notes before trial. Our finding affirms our recent ruling in State v. Manuel, 253 La. 195, 217 So.2d 369, wherein we stated:

"The notes and reports of law enforcement officers during a criminal investigation are privileged and immune from pre-trial inspection by the defendant. State v. Pailet, 246 La. 483, 165 So.2d 294; State v. Mattio, 212 La. 284, 31 So.2d 801, cert. denied, 332 U.S. 818, 68 S.Ct. 145, 92 L.Ed. 395.

"Defendant contends that since the report contained the essence of the confession, it was subject to pre-trial discovery under a logical extension of our decision in State v. Dorsey, 207 La. 928, 22 So.2d 273, requiring the production of written confessions. Despite the written report, we view the confession as an oral one. Such a confession, under the well-established jurisprudence, is exempt from pre-trial discovery. State v. Hunter, 250 La. 295, 195 So.2d 273; State v. Johnson, 249 La. 950, 192 So.2d 135; State v. Bickham, 239 La. 1094, 121 So.2d 207, cert. denied, 364 U.S. 874, 81 S.Ct. 123, 5 L.Ed.2d 98; State v. Lea, 228 La. 724, 84 So.2d 169, cert. denied, 350 U.S. 1007, 76 S.Ct. 655, 100 L.Ed. 869."

■ Counsel for the defendant argue that the typewritten notes were not admissible in evidence because they were not read to the defendant; they rely on the case of State v. Comery, 214 La. 245, 36 So.2d 781. We do not think that the Comery case is apposite. Therein, the district attorney made notes while he and the sheriff were questioning the accused. The notes were typed; they were read to the accused in the presence of the district attorney, the sheriff, and a deputy sheriff; the typewritten notes were signed by the accused. The trial judge admitted the type-written notes—not the original notes—in evidence as an original confession. We held that the ruling of the trial judge was correct and made the following statement:

"We think the trial judge's ruling was correct because the notes taken by the district attorney were not read to the accused or signed by her. To permit the introduction of notes taken by anyone without having them read back to the accused and without permitting her to admit or deny their correctness would constitute a very serious error and could not be considered the confession of the accused. * * *"

The typewritten notes herein were not admitted in evidence as an original confession.

Therefore, counsel's contention with respect to the present oral confession is without merit.

Counsel for the defendant rely on the case of State v. McMullan, 223 La. 629, 66 So.2d 574,[3] to support their argument that even if the typewritten notes were admissible in evidence, they were only admissible in their written form and not through the testimony of the investigating officers.

We do not find that the McMullan case, supra, is apposite. Herein, the oral confession was in evidence when the officers testified with respect to the statements the defendant made to them. In McMullan, the coroner's testimony with respect to statements made by the defendant was allowed in evidence before a document reducing the defendant's testimony to writing was offered and admitted in evidence.

■ We find no error in the trial judge's ruling which permitted Officers Bickham and Passman to refresh their memories by reference to the defendant's oral confession when they testified with respect to the defendant's statements to them. Both officers had questioned the defendant; one wrote the notes while the other observed and listened. State v. Sbisa, 232 La. 961, 95 So.2d 619; State v. Vernon, 251 La. 1099, 208 So.2d 690; State v. Ferris, 142 La. 198, 76 So. 608.

■ Under the circumstances presented by these bills of exceptions, we do not find that the defendant suffered any prejudice by the trial judge's rulings. The jury had the benefit of defendant's testimony, which in part contradicted the testimony of Officers Bickman and Passman, and also had the benefit of the officers'

---

3. We quote the following from the McMullan case for the purpose of explaining what transpired during trial:
 "While the coroner was on the stand he testified that appellant had made a verbal statement which had been tape recorded. Later, it was reduced to writing in question and answer form but had not been signed by appellant. When the witness attempted to testify regarding its contents, counsel for the defense objected on the ground that the statement itself was the best evidence. The judge overruled the objection and counsel reserved bill No. 2.
 "The judge states in his per curiam that he overruled the objection ' * * * because the statement was in the form of questions and answers and for the further reason that it was not signed by the defendant.' We think that the judge erred in his ruling as the statement, even if unsigned, was the best evidence which 'must be produced' when it is within a party's control. LSA–R.S. 15:436. However, the error was not prejudicial in view of the fact that counsel for the defense later introduced the written statement in evidence.
 "Counsel maintain that this did not wholly cure the damage sustained by permitting the coroner to testify because the witness gave an erroneous interpretation of the statement to the jury. But, inasmuch as the coroner's evidence is not attached to and made part of the bill, we are unable to say that he misinterpreted the written statement to defendant's prejudice. Obviously, we cannot accept counsel's unsupported statement that such was the case."

testimony. The jury heard extensive direct-examination and cross-examination before deliberating on its verdict.

We conclude that the trial judge neither abused his discretion nor committed error in his rulings with respect to Bills of Exceptions Nos. 2 and 5.

Bills of Exceptions Nos. 2 and 5 are without merit.

The motion in arrest of judgment and the motion for a new trial incorporate the same matters above discussed.

Bills of Exceptions Nos. 9 and 10 are without merit.

BILL OF EXCEPTIONS NO. 8.

 Bill of Exceptions No. 8 pertains to specification of error No. 2. It was reserved when the trial judge refused to give the jury special instructions that its verdict to acquit or convict the defendant must be by a unanimous vote.

Counsel for the defendant contend that the defendant was deprived of his constitutional rights, Art. III, Sec. 2, of and the Sixth Amendment to the Constitution of the United States; they further contend that the defendant suffered prejudice and was deprived of a fair trial.[4]

L.S.A.–C.Cr.P., Art. 782, provides:

"Cases in which the punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which the punishment is necessarily at hard labor shall be tried by a jury composed of twelve jurors, nine of whom must concur to render a verdict. Cases in which the punishment may be imprisonment at hard labor, shall be tried by a jury composed of five jurors, all of whom must concur to render a verdict. Except as provided in Article 780, trial by jury may not be waived."

Neither the United States Supreme Court nor this Court has ruled the above statute unconstitutional. No further discussion is necessary; defendant's contention has been adversely answered in State v. White, 254 La. 389, 223 So.2d 843; State v. Dunn, 254 La. 425, 223 So.2d 856.

Bill of Exceptions No. 8 is without merit.

For the reasons assigned, the conviction and sentence are affirmed.

BARHAM, J., concurs in the result.

4. The Minutes of the trial court reflect that the verdict was nine to three.