254 So.2d 259

**STATE of Louisiana**

**v.**

**Chester O'Neil JACKSON.**

No. 51113.

Nov. 8, 1971.

Barry F. Viosca, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.

BARHAM, Justice.

The defendant has appealed after being convicted of the crime of armed robbery and sentenced to 30 years.

### Bill of Exception No. 1.

This bill was reserved when the court denied a motion to suppress the identification of the defendant. The defense contends that the lineup identification was in violation of the principles announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); and that the photographic identification was obtained in violation of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

At the hearing on the motion to suppress the defense called two officers of the New Orleans police force to testify. One knew nothing about the identification made by Jerry Scott, one of the victims of the armed robbery, but the other was the officer who had conducted the lineup where Scott identified the defendant, and he testified fully concerning the arrangements. The defendant had been brought from Central Lockup along with five other men of similar color, general description, and age, all dressed in blue coverall uniforms. The defendant was allowed to select his position in the lineup, and he chose the No. 5 position. Scott was the only witness to view the lineup, and only this one group was shown. Scott was instructed to remain silent during the viewing and, if he recognized anyone, to wait until he was asked before giving any indication. A photograph and a sketch of the lineup were identified by the officer, and he pointed out on these the defendant whom Scott identified in the lineup. The officer also identified a written waiver of the presence of counsel at the lineup, though he was not the person who obtained it. According to

this waiver, the defendant was told that he was to be placed in a lineup, that the results of the lineup could be used against him in court, that he had a right to have a lawyer present, and that if he could not afford one, counsel would be appointed for him without cost. The statement of waiver, signed by the defendant, contains the following: "Knowing and fully understanding these rights, I have elected to waive them and will appear at the line up without my lawyer or an appointed lawyer being present."

The only other witness who testified at the hearing was the victim Scott. He stated that on two occasions he had been called by the police to look through groups of mug shots; that upon the second occasion he saw the defendant's picture and identified the defendant as one of the robbers. He further testified that although he could not remember when the lineup was held or how many persons composed it, he definitely remembered picking out the defendant as being one of the robbers. He also declared that no one suggested to him any particular person to be identified.

■■ Stovall v. Denno, supra, requires an intelligent waiver of counsel. While defense counsel here admits "There is little doubt that waiver was knowingly given", he questions whether it was intelligently given. The record both on the motion to suppress and at the trial is totally devoid of any evidence suggesting that the written waiver of counsel was not given intelligently. The evidence of the circumstances surrounding the lineup is convincing of the total fairness of the proceeding. The picture of the lineup buttresses the testimony of the officer and the victim that there was no suggestiveness in the composition or the conduct of the lineup identification. Even were we concerned with a tainted out-of-court identification, there is here an in-court identification founded upon the victim's acquaintance with the defendant and a good observation of the defendant at the time of the crime. State v. Allen, 251 La. 237, 203 So.2d 705; State v. Singleton, 253 La. 18, 215 So.2d 838; State v. Pratt, 255 La. 919, 233 So.2d 883.

■ The defendant contends that the photographic identification was made under circumstances " * * * so unnecessarily suggestive and conducive to misidentification as to deny him due process of law * * *". Simmons v. United States, supra. The facts developed at the hearing on the motion to suppress and at the trial are as follows: The crime occurred in broad daylight with the defendant facing Scott. Scott, who had himself served time at Angola, recognized the defendant as having been a fellow-inmate with him there. He knew the defendant by sight but not by name. He went to view mug shots on two or perhaps three occasions, and on

the last occasion he was able to pick out a picture of the defendant and identify him as one of the robbers.

The defense takes the testimony of Scott about his recognition of the defendant's picture on the last occasion to mean that he had seen the same mug shot previously but was able to identify it as a picture of the robber only after seeing it two or three times. This is not our understanding of the testimony. Scott's testimony is that after he had viewed numerous mug shots on two or three occasions, the police for the first time presented to him among the mug shots a picture of the defendant which he was able to recognize.

The identification of the photograph was necessary in order that the police might apprehend the robber, whom the victim saw and knew but could not name. As was stated in Stovall v. Denno, supra, "However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it * * *." Simmons v. United States, supra, cited Stovall and held that "convictions based on eyewit-

ness identification at trial following a pretrial identification by photograph will be set aside on that gound only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification".

In the instant case we find no suggestive procedure used in obtaining the photographic identification. As we previously noted, the defendant was known to the victim, who also identified him at the lineup and again in court. This bill is without merit.

■ Defendant argues before this court that the trial judge erred in allowing introduction at the trial of the photograph of the lineup, the waiver, and the mug shot of the defendant.

Defense counsel had every opportunity to examine the exhibits offered, to have them correctly presented to the jury, and to object if they were improperly offered. He did not do so, he has waived his right to urge technical objections of admissibility, and he cannot now complain.*

---

* The only basis for defendant's objection to this evidence which had merit if it had been presented to the trial court for correction was that the mug shot contained writing on the reverse side revealing that the defendant had a prior conviction. We have indicated previously that the jury heard testimony of the defendant's former imprisonment at Angola, and we note that this testimony was placed before the jury through defense counsel's cross-examination of the victim Scott. Finally, we are not informed as to how the photograph was exhibited to the jurors, whether they even saw the reverse of the photograph, or whether they understood the import of the inscription "On parole. Expires 6–1–75 Armed Robbery".

The defendant's argument presents no error which is reversible in the absence of objection and bill of exception.

*Bill of Exception No. 2.*

█ This bill was reserved to the denial of a motion for a new trial. The minutes of court show that on May 29, 1970, defendant with counsel, after the reading of the verdict of guilty, waived all legal delays for sentencing and was forthwith sentenced. A motion for new trial was filed June 11. It was not timely and is not considered. See C.Cr.P. Art. 853.

█ Finally, defendant asks us to review the record for error discoverable by mere inspection of the pleadings and proceedings. We are required to do this in every appeal, and to note and consider any such error even in the absence of a bill of exception. C.Cr.P. Art. 920(2). The defense argues that there is error patent on the face of the record in this respect: The minutes show that the 12-man jury returned a verdict of guilty by a vote of nine to three, and Article 782 of the Code of Criminal Procedure which permits non-unanimous verdicts in certain cases violates the United States Constitution.

We are cognizant that there are cases pending in the United States Supreme Court involving the constitutionality of state statutes authorizing the non-unanimous verdict, including a Louisiana case, State v. Johnson, 255 La. 314, 230 So.2d 825 (1970), probable jurisdiction noted 400 U.S. 900, 91 S.Ct. 144, 27 L.Ed.2d 137. We cannot foretell that court's decision on this issue, but we ourselves have considered the contention a number of times and have unanimously and uniformly rejected it. State v. Schoonover, 252 La. 311, 211 So.2d 273 (1968); State v. White, 254 La. 389, 223 So.2d 843 (1969); State v. Dunn, 254 La. 425, 223 So.2d 856 (1969); State v. Brumfield, 254 La. 999, 229 So.2d 76 (1969); State v. Johnson, supra; State v. Fink, 255 La. 385, 231 So.2d 360 (1970); State v. Caston, 256 La. 459, 236 So.2d 800 (1970); State v. Dell, 258 La. 1024, 249 So.2d 118 (1971). In addition to our Code article providing for non-unanimous verdicts, our Constitution in Article 7, Section 41, declares that cases in which the punishment is necessarily at hard labor shall be tried by a jury of 12, nine of whom must concur to render a verdict. It is our considered opinion that neither the Code article nor our constitutional provision is in conflict with Article 3 of the United States Constitution or the Sixth Amendment.

The conviction and sentence are affirmed.