310 So.2d 528 (1975)
STATE of Louisiana
v.
Larry D. WILLIAMS.
No. 55563.
Supreme Court of Louisiana.
March 31, 1975.
*530 Lawrence J. Genin, Marrero, Lenon J. Parent, Jr., Chauppette, Genin, Mendoza & Parent, Marrero, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Robert A. Pitre, Asst. Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Div., Gretna, Keith S. May, Research Atty., Research and Appeals Division, for plaintiff-appellee.
DIXON, Justice.
Larry D. Williams was indicted by the grand jury of Jefferson Parish on October 11, 1972 for the crime of aggravated rape. The defendant was arraigned and pleaded not guilty. Several pretrial motions were filed on behalf of the defendant. On March 27, 1973 trial was held. This trial resulted in a mistrial because the jury could not agree on a verdict. Defendant was retried on October 12, 1973 and the jury found him guilty without capital punishment. Numerous bills of exceptions were reserved; eight are presented to this court.
Bill of Exceptions No. 1
During voir dire examination of the petit jurors it was noted that only twenty-two of the fifty-five prospective jurors were present. Defendant alleges that this prejudiced his rights and was grounds for a mistrial. The court, exercising its discretion under C.Cr.P. 785, simply asked for and obtained tales jurors from another section of the court. This was entirely proper.
Defendant does not allege that the jury obtained by this system was unfair or biased. Nor does he attack the qualifications of any of the jurors chosen. Defendant's only complaint, one which he did not raise to the trial judge, is that because the list of names of prospective jurors for each court is released at the first of the week he would have been able to investigate the jurors for the court scheduled to hear his case but that when the other court's jurors were substituted because of the large number of absences, he was not able to investigate the new prospective jurors before trial (a practice not shown to have been followed by defense counsel). This contention is without merit. C.Cr.P. *531 785 provides for the exact procedure followed by the trial judge in this case. The defendant does not allege that he received a biased jury because of the procedure. Defendant's only allegation of injury is not supported by any facts.
This bill is without merit.
Bill of Exceptions No. 2
Defendant also moved for a mistrial during the voir dire examination because of the remarks of one of the prospective jurors when questioned by the district attorney. The exchange was as follows:
"D. A. (Mr. Pitre)Do you know any of us involved?
"A JUROR: Yes, sir, I know the victim.
"MR. PITRE: You know the victim, you know Marilyn Adams?
"A JUROR: Yes.
"MR. PITRE: Are you friends with Mrs. Adams?
"A JUROR: Yes, I am.
"MR. PITRE: Would your knowing Mrs. Adams influence your decision in this case?
"A JUROR: Yes.
"MR. PITRE: We'll excuse him.
"THE COURT: You may step down."
The defendant contends that this exchange was prejudicial to him, apparently because the other jurors would be led to believe that the excused juror knew something about the case and knew that the defendant was guilty. The defendant presumes too much. There is no showing that the remarks of the excused juror affected the other jurors. Certainly the conclusion that they were led to believe that the defendant was guilty by the above exchange is unjustified. The entire purpose of voir dire is to select jurors who can render an impartial verdict. This prospective juror properly advised the court that his friendship with the victim would affect his verdict.
The bill is without merit.
Bill of Exceptions No. 3
The third assigned error was reserved when the trial judge refused to give three requested special jury charges. The first requested charge concerned the duty of a juror to adhere to an opinion which squares with his conscience, regardless of the division of opinion among the jurors. The requested charge was not precisely correct. C.Cr.P. 807 requires the trial judge to give any special jury charges requested by the parties if they do not require qualification, limitation or explanation; they are wholly correct and pertinent, and are not included in the general charge. The charge requested by the defendant, omitting the phrase "hung jury" and the consequences of a mistrial, was included in the general charge. The trial judge instructed the jurors that each one was to decide the innocence or guilt of the accused in his own mind and to stick to that opinion in spite of being outnumbered, unless convinced by other jurors that his opinion did not conform to the law or evidence. All of the important points concerning the jury's determination of guilt or innocence were covered by the trial judge, and it was not error to refuse to give the requested charge.
The second requested charge concerned the issue of reasonable doubt. The only difference between the requested charge and the portion of the trial judge's general charge concerning this issue is the wording of the instruction and the emphasis. The defendant's requested charge stressed the duty to acquit the accused if doubt existed as to his participation in the crime. Although the defendant's charge can be said to be a proper statement of law, the trial judge fully covered this issue in the general charge.
*532 The third requested charge concerned the law on the eyewitness identification. Once again the trial judge covered this question in his general charge. The trial judge noted that the jurors were to consider all the factors surrounding the confrontation to determine whether the witness correctly identified the defendant, and that they must find that the witnesses correctly identified the defendant beyond a reasonable doubt before they could find the defendant guilty. The defendant's requested charge is not inaccurate, but the subject was fully and accurately covered by the trial judge in his general charge.
This bill of exceptions is without merit.
Bill of Exceptions No. 4
This bill was reserved when the trial judge denied a motion to suppress the grand and petit jury venires. Defendant alleges that both women and members of the class of persons between the ages of eighteen and twenty-one years of age were unconstitutionally excluded from the jury venires.
In Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the United States Supreme Court held that the Louisiana exclusion of women from the jury system was an unconstitutional discrimination. In Daniel v. Louisiana, 420 U.S. 31, 95 S. Ct. 704, 42 L.Ed.2d 790 (1975), the Supreme Court held that the Taylor decision would not be applied retroactively to any jury empaneled before the date of the decision. Defendant's claim of unconstitutionality because of the exclusion of women is without merit.
Defendant also contends that R.S. 13:3056, as amended by the legislature by Act No. 523 of 1972, shows a legislative intent to end the jury exemption for women. This contention is without merit. The amendment to this statute was passed in contemplation of the passage of an amendment to the Louisiana Constitution of 1921. Article 7, § 41 of the 1921 Constitution provided that women could not be called for jury service unless they had previously filed a written declaration of their desire to serve. The contemplated constitutional amendment deleting this provision failed to pass the general election. Even if it could be assumed that the legislature was attempting to make the broad change that the defendant contends, the act was in direct conflict with the existing constitutional provision. It should also be noted that the legislature did not amend article 402 of the Code of Criminal Procedure. This article provides express authority for the exclusion of women from juries in criminal cases. There was no error in the exclusion of women from the jury.
The defendant also alleges that the class of persons between the ages of eighteen and twenty-one years of age was arbitrarily excluded from the grand and petit jury venires. This contention has been previously considered by this court. In State v. McKinney, La., 302 So.2d 917 (1974), this court held that the group of prospective jurors between the ages of eighteen and twenty-one is not so identifiable a group that their exclusion renders the jury nonrepresentative of the general community. As in the McKinney case, there is no evidence in the record before this court that eighteen to twenty-one year olds were excluded from the jury venires. Without evidence that an identifiable class of persons was systematically excluded from participation in the jury system, the venires must be upheld.
This bill of exceptions is without merit.
Bill of Exceptions on Motion to Produce Transcripts of the Grand Jury Testimony
Defendant contends that he had a right to inspect the testimony of the prosecution witnesses before the grand jury. Defendant bases this contention on a claim that C.Cr.P. 434 is unconstitutional. That article states:
"Members of the grand jury, all other persons present at a grand jury meeting, *533 and all persons having confidential access to information concerning grand jury proceedings, shall keep secret the testimony of witnesses and all other matters occurring at, or directly connected with, a meeting of the grand jury. However, after the indictment, such persons may reveal statutory irregularities in grand jury proceedings to defense counsel, the district attorney, or the court, and may testify concerning them. Such persons may disclose testimony given before the grand jury, at any time when permitted by the court, to show that a witness committed perjury in his testimony before the grand jury. A witness may discuss his testimony given before the grand jury with counsel for a person under investigation or indicted, with the district attorney, or with the court.
"Any person who violates the provisions of this article shall be in constructive contempt of court."
Defendant in effect advances three arguments to support his contention that pretrial access to testimony before the grand jury is constitutionally required. (It should be noted that article 434 does not prevent the defense attorney from interviewing the witnesses who appeared before the grand jury. It is not contempt of court if the witnesses discuss their testimony with counsel for the defendant. The State is not denying the defendant access to witnesses by article 434 but the State is refusing to provide access to the recorded testimony of the witnesses).
Defendant's first argument is that the rights of an accused provided by the Sixth Amendment to the United States Constitution are operative from the moment of arrest and therefore the defendant has the right to confront the witnesses at the grand jury proceedings, if he has been previously arrested, as in this case, and to have counsel represent him at these proceedings. This novel argument ignores the basic purpose of the grand jury. Grand jury proceedings are not meant to be adversary proceedings. They provide the accused the right to an independent determination of probable cause. Sound policy considerations support the rule that grand jury proceedings are to be kept secret. See: State v. Hudson, 253 La. 992, 221 So.2d 484 (1969), reversed on other grounds, 403 U.S. 946, 91 S.Ct. 2282, 29 L. Ed.2d 856, on remand, 260 La. 644, 257 So.2d 135 (1971); State v. Curry, 262 La. 616, 264 So.2d 583 (1972).
Defendant also argues that he should have had counsel present at the grand jury proceedings because the investigation had turned to the accusatory stage.
In Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), Justice Black noted the historical development and purpose of the grand jury. The issue before the court was whether a grand jury indictment could be based completely on hearsay evidence. Justice Black noted that the grand jury is a separate institution from the remainder of the criminal justice system and that in fact the grand jury was not bound by the procedural and evidentiary safeguards provided by the various constitutional amendments. It is not an adversary proceeding, but an investigative and accusatory body whose function is to determine probable cause for prosecution. The court held an indictment was not invalid because based wholly on hearsay evidence.
Finally, defendant contends that the decision of the United States Supreme Court in the case of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requires the State to give the defendant a copy of the grand jury testimony. This contention is without merit. Brady requires the prosecution to inform the defendant of exculpatory evidence. However, the State does not have to open its files to the defendant and allow the defendant to search and decide what is exculpatory.
*534 Defendant was attempting to obtain pretrial discovery of the prosecution's evidence. It is well settled in this State that discovery in criminal cases is very limited. State v. Hunter, 250 La. 295, 195 So.2d 273 (1967); State v. Rose, 271 So.2d 863 (La.1973).
Bill of Exceptions on Motion to Take Depositions
Defendant moved to be allowed to take the depositions of the witnesses in the case. Defendant does not contend that he was denied the right to interview witnesses prior to trial. As noted above, he was simply attempting to obtain pretrial discovery in a criminal case. This is not permitted by the procedures used in criminal trials in this State.
For the reasons noted above, this bill is also without merit.
Bill of Exceptions on Motions to Suppress Identification Heard on March 1, 1973 and October 11, 1973
Defendant filed a motion to suppress both the out-of-court and the in-court identification of the defendant by the victim. These motions were based on the contention that two photographic line-ups conducted during the investigatory stage of the case were illegally conducted in such a manner as to create a substantial chance that the victim misidentified the defendant. The defendant further contended that the taint was so substantial that the witness was not capable of making an independent in-court identification.
In cases of this nature the identification of the defendant by the victim is oftentimes the most importatnt, if not the only real issue of dispute in the trial. On review, all of the surrounding facts and circumstances of the photographic line-up should be considered to determine if it was conducted in such a manner as to suggest to the victim that this defendant was the perpetrator of the crime. "... convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968); State v. Wallace, 285 So.2d 796 (La.1973).
The victim was approached as she was about to get into her car at night after work. The defendant put a knife to her back and told her to get in the car. The defendant got in the car behind her and ordered her to sit very close to him in the front seat. The defendant then drove the victim to a deserted trash dump, forced her into the back seat of the car and raped her. The incident took place over a fairly lengthy period of time and the victim did talk to the defendant during this interval about what he planned to do with her, etc. There was ample opportunity for the victim to observe the defendant during the course of the trip to the dump and during the rape. The defendant made the victim sit next to him at all times during the incident.
After the rape the victim drove herself to a hospital and reported what had happened to a member of the staff. The hospital called the police and they came to the hospital to interrogate the victim. At this time the victim gave a description of the assailant to the police and she was asked to look at several photographs to see if her assailant was one of the men. These photographs were black and white mug shots and were not of uniform quality. The victim picked out two of the pictures and told the police that the assailant "either had to be one of the two. I was not sure." The defendant was one of the two pictures picked out at this time.
Deputy Ponds, one of the officers investigating the case, obtained new color photographs of several persons; he took one of the defendant and included it in the group. Deputy Ponds was unable to obtain *535 a new picture of the other suspect picked out by the victim at the original picture line-up. He took this second group of pictures to the victim and asked her if any of the men in the pictures was her assailant. The victim positively identified the defendant from this set of pictures.
Both sets of pictures are included in the record. An examination of each set shows that the photographs contained substantial numbers of persons with characteristics similar to the defendant, or similar to the characteristics described by the victim. Deputy Ponds did not at any time suggest to the victim that her assailant's photograph would be in the group. He only asked her to look at the pictures and see if the man who attacked her was pictured. There is no question but that each individual line-up was properly conducted.
Defendant argues, however, that the failure to include in the second photographic line-up the picture of both men tentatively identified at the first photographic line-up in effect told the witness that the defendant was the assailant because his picture was the only one common to both groups of pictures. Although it certainly would have been better if the police had included a picture of the other man identified by the victim at the first line-up in with the pictures at the second line-up, we find under the facts of this case: that first, there was a good reason for the exclusion of the color picture of the other suspect (there was no color picture available and the suspect could not be located); and second, this action did not lead to a substantial likelihood of irreparable misidentification. The victim testified that the reason she wasn't sure which picture was the right man at the first line-up was that the pictures were of poor quality. At the time of the first line-up the victim was emotionally upset and she had been given a relaxant. Her memory of this line-up is not too clear. The second line-up occurred two days later and took place under less trying conditions. The victim testified that she didn't even notice whether the other man she picked out at the first line-up was included in the second group. In other words, when she saw the set of color pictures she was able to identify the defendant independently of the first lineup. She went through the pictures several times to make sure she had the right man, but she stated that she could tell immediately that he was the assailant from the color photograph. Under the facts of this case, the two photographic line-ups in which the defendant was the only common subject did not lead to a substantial chance of misidentification.
Additionally, we note that even if the photographic line-ups could be considered tainted, the victim positively identified the defendant at trial as the man who committed the crime. If all of the surrounding circumstances show that the in-trial identification of the defendant is based on an independent recollection of the events of the crime rather than on an illegal pretrial identification, then the in-trial identification is admissible. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); State v. Amphy, 259 La. 161, 249 So.2d 560 (1971). In Wade the United States Supreme Court set out factors to consider when determining whether the in-court identification could be considered independent of a tainted pretrial line-up. This court discussed these standards in State v. Newman, 283 So.2d 756, 759 (La. 1973), where we stated:
"Even if the out-of-court identification was tainted, if the in-court identification had a source independent of the out-of-court identification, the in-court identification does not violate defendant's due process rights. State v. Amphy, supra; State v. Richey, 258 La. 1094, 249 So.2d 143; United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). A determination of whether the witness's in-court identification was *536 based on an independent source seems to involve three factors:
"1. The prior acquaintance of the witness with the accused. State v. Rose, 271 So.2d 863 (1973); State v. Jackson, 259 La. 957, 254 So.2d 259 (1971).
"2. Length of time the witness observed the perpetrator before, during and after commission of the offense. State v. Hall, 261 La. 777, 260 So.2d 913 (1972); State v. Pierre, 261 La. 42, 259 So.2d 6 (1972); State v. Richey, supra; State v. Amphy, supra; State v. Pratt, 255 La. 919, 233 So.2d 883 (1970).
"3. The circumstances under which the observation was made. See, generally, the cases cited in the preceding paragraph. This consideration should include illumination at the scene, the physical capacities of the witness, and the emotional state the witness was in at the time of observation."
Although in this case the victim did not know the defendant, she was very close to him for a substantial period of time. She conversed with him and observed him during the drive to the trash dump. At trial there was no doubt in her mind that this was the man who raped her. However, under the facts in this case the photographic line-ups were not impermissibly suggestive.
This bill of exceptions is without merit.
For the reasons assigned, the conviction and sentence of the defendant are affirmed.
TATE, J., assigns additional concurring reasons.
BARHAM, J., concurs, being of the opinion that grand jury testimony should be available to defendant as it is available to the State. Further, the photographic identification is impermissibly tainted and this writer is not unequivocal in determining the in-court identification was not gained by reason of the photographs.
TATE, Justice (concurring).
I concur in most of the opinion and in the result. However, I see no reason to deny a defendant access to grand jury testimony, once an indictment is found. The historical reasons for protecting the secrecy of testimony before a grand jury then no longer apply. See Note, Discovery by Criminal Defendant of His Own Grand Jury Testimony, 68 Columbia L.Rev. 310 (1968) and Annotation, 20 ALR 3d 7 (1968).
Witnesses whose testimony results in an indictment should be subject to question as to discrepancies between their present trial testimony and sworn testimony they gave to the grand jury. Annotation, 20 ALR 3d 7, Sections 23, 24 (pp. 104-113) (1969). The defendant no less than the State should have available this ability to assure truthfulness of trial testimony. Under a proper showing, a Brady reversal, or a post-conviction order for new trial, may result through failure to afford an accused access to favorable grand jury testimony.
For these reasons, it seems to me, the rule denying access of an accused to grand jury testimony after indictment will be modified at some time in the future.
For the reasons stated by the majority opinion, however, I do not believe that the present record demonstrates any actual prejudice sustained by the defendant (even though, on post-conviction application, the failure to allow access may become significent). Since no actual unfairness is shown to have resulted in the denial of a fair trial to the accused, the present may not be an appropriate case in which to overrule past interpretations upon which the trial court ruling is based.
I therefore respectfully concur.