387 So.2d 1140 (1980)
In re GRAND JURY SUBPOENAS Issued to David Lewis Graham and Eric Joseph Graham.
No. 67382.
Supreme Court of Louisiana.
June 23, 1980.
*1141 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul J. Carmouche, Dist. Atty., B. Woodrow Nesbitt, Jr., Asst. Dist. Atty., for relator.
Robert G. Pugh, Bobby D. Sutton, Burnett, Sutton, Walker & Callaway, Shreveport, for David Lewis Graham and Eric Joseph Graham, respondents.
BLANCHE, Justice.
On March 31, 1980, Kathleen Graham was found bludgeoned to death in her Shreveport home. Her husband and three children, David Lewis, age 16, Eric Joseph, age 12 and Kathleen Renee, age 7, were home at the time. The Caddo Parish Grand Jury convened and in order to conduct an investigation into the death of Kathleen Graham, subpoenas were issued to David and Eric Graham. A motion to quash the subpoenas were filed by Dr. Graham as the father and provisional tutor of the minors. Prior to the hearing on the motion the trial court, in order to avoid any possibility of a conflict of interest, appointed counsel to represent the minors. After argument on the motion, the court quashed the subpoenas. We granted the writ of certiorari.
Although the state, in both oral argument and brief, has consistently maintained that the children are not suspects, it has refused to grant the children immunity, and argues that the protections offered adult witnesses are sufficient safeguards to protect the children.[1] We are urged to reinstate the subpoenas and require the attendance of the children before the grand jury. Both counsel for Dr. Graham, as provisional tutor, and the court-appointed counsel contend that State in the Interest of Dino, 359 So.2d 586 (La.1978) is controlling, and that the grand jury subpoenas were properly quashed.
Thus, this Court is faced with what appears to be a collision course between the minor's right against self-incrimination and the state's interest (and that of a future accused) in the integrity of the grand jury.
Both the United States Constitution and the Louisiana Constitution guarantee the accused in a capital case the right to a grand jury. U.S.Const. amend. 5; La. Const. art. 1, § 15. Under the Louisiana Constitution, the grand jury has the right to question witnesses and return bills of indictment. La.Const. art. 1, § 15; art. 5, § 34. Traditionally, the proceedings of the grand jury have been cloaked in secrecy. See State v. Revere, 232 La. 184, 94 So.2d 25 (1957). Various reasons have been given for this secrecy, including:
"(1) It promotes freedom in the disclosure of crime; (2) prevents coercion of grand jurors through outside influence *1142 and intimidation and thus permits a freedom of deliberation and opinion otherwise impossible; (3) protects the safety and freedom of witnesses and permits the greatest possible latitude in their voluntary testimony; (4) prevents perjury by all persons appearing before the grand jury; (5) prevents the subornation of perjury by withholding facts that, if known, the accused or his confederates might attempt to disprove by false evidence and testimony; (6) avoids the danger of the accused escaping and eluding arrest before the indictment can be returned; and (7) keeps the good names of the persons considered, but not indicted, from being besmirched." State v. Revere, supra, 94 So.2d at 29; La.C.Cr.P. art. 433, comments.
In light of these sound policy considerations, a witness is not entitled to the presence of an attorney during grand jury questioning. State v. Williams, 310 So.2d 528 (La.1975). In order to enforce our statutory provisions requiring this secrecy, this Court, in State v. Revere, supra, held that the mere presence of an unauthorized person in the grand jury room required that the indictment be quashed.[2]
As emphasized in United States v. Mandujano, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976), a witness has a duty to testify if called before the grand jury, conditioned only upon his privilege against self-incrimination. The witness must invoke the privilege, however, as the `Constitution does not forbid the asking of criminative questions.' 96 S.Ct. at 1775.
As a witness also has no right to the presence of his counsel in the grand jury room, Mandujano, supra, the competing interests of grand jury secrecy and a witness' Fifth Amendment concerns have led to a rough compromise heavily dependent upon a witness' awareness and self-possession. The witness must grasp the implications of a question, halt his testimony, seek out his counsel at the grand jury door for his opinion, then return, either to answer the question or to assert a Fifth Amendment claim. The consequences of a failure to ask, or a misguided refusal to answer, rest with the witness.
In contrast, recent decisions of this Court and the United States Supreme Court have demonstrated an increasing awareness on the part of the judiciary to the particular problems involved with protecting the juvenile's constitutional rights. Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); In Re: Dino, supra.
In Dino, supra, this Court held that before any inculpatory statements obtained during an interrogation may be used against a juvenile, the state must show that the child engaged in a meaningful consultation with an attorney, or an informed parent, guardian or other adult interested in his welfare before he waived his right to counsel and privilege against self-incrimination. The rationale behind this rule is that the general policy of the law is to protect all minors from the possible consequences of their immaturity. Considering this policy, we reiterate that:
"Because most juveniles are not mature enough to understand their rights and are not competent to exercise them, the concepts of fundamental fairness embodied in the Declaration of Rights of our constitution require that juveniles not be permitted to waive constitutional rights on their own." Dino, supra, at 594. [Footnotes omitted].
With these principles in mind, we disagree with the state's contention that the ordinary protections offered adult witnesses are sufficient to protect a child's interest. For *1143 instance, allowing the juvenile witness to confer with his attorney outside the grand jury room offers little protection to the witness who may be too immature to accurately report the questions of the prosecutor to his attorney. Nor can we assume that the inexperienced minor unfamiliar with the self-incrimination privilege will understand when to assert the privilege. Further, we believe that a juvenile by virtue of his age and inexperience is likely to find the grand jury proceeding where he is surrounded by older authority figures a coercive experience.
For these reasons, we find that to compel a minor's attendance at a grand jury hearing without affording him the protection of the counsel of his attorney therein, violates the concepts of fundamental fairness embodied in our Declaration of Rights. La.Const. art. 1, § 2; § 3; § 16.[3]
Although we agree with the trial court's reasoning, we do not find that quashing the subpoenas is the proper remedy. La.C.Cr.P. art. 437 provides that the grand jury shall inquire into all capital offenses. Further, La.Const. art. 1, § 15 requires that all prosecutions for capital crimes and crimes punishable by life imprisonment be initiated by indictment. To require that all subpoenas to minors by the grand jury be quashed would severely limit the grand jury in its investigative duties. We conclude that the proper remedy, in order to provide both adequate safeguards for the juvenile and to protect the investigative duties of the grand jury, is to permit the subpoenas to stand and allow juveniles to be accompanied by an attorney.[4] In order to protect the secrecy of the grand jury proceedings required by C.Cr.P. art. 434, the foreman should administer to the attorney the oath of secrecy as provided for in C.Cr.P. art. 441.
For the reasons assigned, the ruling of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.
DIXON, C. J., concurs with reasons.
CALOGERO, J., concurs and joins in reasons assigned by DIXON, C. J.
LEMMON, J., dissents and will assign reasons.
DIXON, Chief Justice (concurring).
I agree with the majority opinion, but object to the requirement that an oath of secrecy, provided in C.Cr.P. 441 for reporters and interpreters, be administered to attorneys for the children. C.Cr.P. 434 places a duty of secrecy on all persons present at a grand jury meeting, as regulated by statute and the Constitution. Stringent standards of professional conduct govern lawyers; their obligations sometimes seem to conflict. Because of the discretionary powers they are expected to exercise, they occupy a professional status in society. We should not unnecessarily confuse the exercise of that discretion with the threat of contempt proceedings for the violation of an oath of secrecy. The lawyer must be as free as possible, under the law and standards of professional conduct, to advise and protect his young clients.
NOTES
[1] The state argues that a child's testimony could be used only as the basis of a perjury prosecution and that the testimony could not be used to cross-examine him. The state also argues that the presence of an attorney outside the grand jury room is adequate protection for the child against unwitting self-incrimination.
[2] Note that as Justice McCaleb points out in his dissent, this Court adopted the minority view in this country. In criticizing the majority decision, he stated:

"The majority opinion in this case is not only admittedly contrary to the prevailing view throughout this country on the question of the effect of the legality of grand jury proceedings when persons, other than the grand jurors, are present in the grand jury room-it is in discord with previous holdings of this Court, which are not mentioned in the opinion."
[3] By this decision, we do not in any way intend to change the rule of State v. Williams, supra, that an adult witness is not entitled to the presence of an attorney in the grand jury room.
[4] In order to avoid a conflict of interest, each child should be represented by counsel separate from both his sibling and their father.